# CHARLESTON.

## STONE v. SIMMONS.

Submitted June 2, 1904.   Decided October 25, 1904.

1. EXECUTOR—*Qualification—Injunction.*

   M. B. S. named in the will of J. M. S. as executrix, being insane, G. P. S. was appointed administrator with the will annexed; the said M. B. S. being afterwards restored to sanity, moved the county court of R. county to revoke the letters of administration granted to said G. P. S. and to permit her to qualify as executrix under the will, of which motion G. P. S.

had due notice. Said G. P. S. having theretofore instituted a suit in equity in the circuit court of R. county to construe the will and deed and for directions of the court in the disbursement of the funds of the estate in his hands, filed his petition in said suit praying an injunction restraining said M. B. S. from further prosecuting said motion. *Held*, that the circuit court has not jurisdiction to enjoin the qualification as executrix of said M. B. S. under the will. (p. 95).

2. WILL—*Probate—Jurisdiction.*

In the State of West Virginia the county courts, and the clerks thereof, in vacation, have exclusive original jurisdiction in all probate matters involving the probate of wills and the ordinary administrative proceedings involved in the administration of estates. (p. 93).

Appeal from Circuit Court, Roane County.

Bill by G. P. Stone against Minnie B. Simmons. Decree for plaintiff, and defendant appeals.

*Reversed.*

SCHILLING & HARPER, for appellant.

WALTER PENDLETON and S. E. BOGGESS, for appellee.

McWHORTER, JUDGE:

James S. Simmons, on the 7th day of January, 1899, executed a deed conveying certain real estate and personal property therein, to his wife, Minnie B. Simmons, and to each of his three children born of the said Minnie B. Simmons, $5,000 to be invested in bank stock or some other good investment, the interest thereof to be used for the maintenance, education and support of the said three children and the principal to be paid to them respectively when they arrived at the age of twenty-one years; and appointed his said wife guardian of the three children, and on the same day, the said 7th day of January, 1899, said Simmons made and executed his will whereby he disposed of his property referring therein to the said deed bearing same date, and by his said will be appointed his wife, Minnie B. Simmons, executrix and provided that no bond should be required of her. On the 24th day of April, 1899, the will was admitted to probate by the clerk of the county court of Roane county, being duly proved, and on the same day G. P. Stone was appointed by the clerk of the said court administrator of the estate of James M. Simmons with

the will annexed.  The said Minnie B. Simmons having been committed to the Second Hospital for the Insane as an insane person, on the 12th day of April, 1899, the county court of Roane county appointed her brother J. B. Thomasson committee of said Minnie B. Simmons; and on the first day of August, 1902, she was duly discharged as being cured and restored to her normal mental condition.  At the October rules, 1902, G. P. Stone, the administrator, filed his bill in the circuit court of Roane county, alleging that there was in his hands the sum of $9,800, about which there was contention as to whom the same should be distributed, and praying the court for a construction of the deed of January 7, 1899, and of the will, and for instructions from the court as to his duties in the premises, and that the court decide the conflicting claims to said funds, and give directions to him as to its disbursement, and to fix and allow compensation to his attorneys for instituting and prosecuting this suit, to be paid out of the funds in his hands as administrator with the will annexed, and for general relief.

On the 12th of January, 1903, Minnie B. Simmons served notice upon the administrator, Stone, that on the 4th day of February, 1903, she would move the court to revoke his letters of administratorship and allow her to qualify as executrix of the said will of James M. Simmons.  On the 23rd of January, 1903, G. P. Stone filed his petition in the circuit court of Roane county in his said suit praying for an injunction, restraining the said Minnie B. Simmons from prosecuting further said notice to revoke the powers of petitioner as administrator in the county court of Roane county, and that the matters raised by said notice and motion might be heard and determined in said chancery cause along with the matters involved therein, and for general relief.  Said injunction was granted.

The defendant, Minnie B. Simmons, filed her demurrer to the petition in which the plaintiff joined and also filed her answer. The cause was heard upon the motion of the defendant, Minnie B. Simmons, to dissolve the injunction and upon her demurrer and answer and general replication, and upon the plaintiff's bill and exhibits and the answers thereto and the replications, and the court refused to dissolve the injunction and the motion was overruled and disallowed.  From which decree the defendant, Minnie B. Simmons, appealed to this Court; claim-

ing that it was error to enjoin her from qualifying in the county court because the will was probated in said court and under section 1, chapter 85 of the Code, it was proper for her to qualify therein; because the county court of Roane county had exclusive jurisdiction of the matter of said Minnie B. Simmons' qualification as executrix of the will and of the matter of revoking the powers of said Stone as administrator with the will annexed and that the circuit court had no jurisdiction of probate matters, and hence no right to interfere with the county court in adjudicating the matters mentioned in said notice; that the circuit court did not have legal jurisdiction of the suit instituted by said Stone as the question of the construction of the will nor any part thereof was not involved in the case, but only the adjudication of claims between parties of matters accrued after the will was made and probated was involved and of which matters for which relief was sought a court of law had jurisdiction and could afford complete remedy; and that the matter of the qualification of Minnie B. Simmons as executrix and of revoking the powers of said Stone was not raised by the pleadings, and that if it had been the bill would have been thereby rendered multifarious. In his petition plaintiff, G. P. Stone, says it is not his desire to continue to act as administrator with the will annexed of J. M. Simmons longer than it is necessary to have the aid and instruction of a court of equity to relieve him from making a decision of the conflicting claims to the balance of the money remaining in his hands and its directon as to the proper distribution and disbursement of said funds in order that he may be protected against any litigation that might arise, and that when such decree should be entered he was ready to resign as such administrator and have his powers revoked as such, and have another appointed in his place. Section 1, chapter 118, Code, very distinctly points out the course to be pursued by "Any fiduciary mentioned in this section desiring to resign his trust." Said section fully provides for the distribution of funds or property in the hands of any such fiduciary seeking to be relieved from the responsibilities of his trust. The case at bar where the executrix duly named in and appointed by the will was seeking to qualify as executrix and assume the duties and responsibilities of the administration of said estate, it would seem is peculiarly a case where the fiduciary would seek to be relieved un-

der the provisions of said section as he could be at once so reliev-
ed by the substitution in his place of the person designated
by the testator to administer upon his estate; as it is provided
in said section "If it shall appear to the court in any such case
that such fiduciary has not fully settled and accounted for the
estate committed to his charge, or that there is money or other
property in his hands or under his control not yet paid over or
disposed of, such orders may be necessary and proper for the
disposition and safe keeping thereof shall be made by the court
and when such orders are complied with by such fiduciary his
resignation may be accepted." It is insisted by counsel for ap-
pellee that the circuit court has concurrent probate jurisdiction
with the county court, by virtue of chapter 136 of the acts of
1872-3, which they claim is still in full force and effect. This
act provides that "The circuit courts shall have concurrent juris-
diction with the county courts in all matters of probate of wills,
the appointment and qualification of personal representatives,
guardians, committees and curators, and the settlement of their
accounts." But it is contended on the other hand, by counsel
for appellant, that said chapter 136 is unconstitutional because
of its failure to express in its title the object of the act, and
that if it should be held to be constitutional, it is insisted that
by the repealing clauses of chapters 68 and 84 of the Acts of
1882, it was repealed. The Legislature of 1872-3 evidently in-
tended to confer concurrent jurisdiction in such matters upon
the circuit courts, as it not only passed said chapter 136, but by
chapter 122, Acts of 1872-3, it amended section 1 of chapter 85
of the Code of 1868 which provided that "A person appointed
by a will executor thereof shall not have the powers of executor
until he qualify as such by taking an oath and giving bond be-
fore the recorder by whom the will or an authenticated copy
thereof is admitted to record," so as to make it read that such
person should not execute the powers of executor, etc., "Until
he qualified as such by taking an oath and giving bond before the
circuit or county court in which the will or an authenticated copy
thereof is admitted to record." Further, chapter 234, Acts of
1872-3, re-enacting chapter 87, Code, so amended section 1 of said
chapter as to require the clerk of every circuit or county
court to keep a record in a book to be provided for the purpose
"of any personal representative, guardian, curator or committee

authorized to act as such under orders of his court." Which changes were intended to harmonize the provisions in the Code with the said new chapter 136 which had then recently been passed and which so directly conferred probative jurisdiction upon the circuit courts. The action of the Legislature of 1882 in passing chapters 68 and 84, amending chapters 87 and 77 of the Code, respectively, each of which chapters closes with the provisions: "All acts and parts of acts coming within the purview of this act and inconsistent therewith are hereby repealed," taken together with chapter 37 of said acts of 1882, which re-enacts section 1 of chapter 85 of the Code, as amended by said chapter 122 of the acts of 1872-3, by which chapter 37 said section 1 is restored to what it was in the Code of 1868, only substituting "The county court or the clerk thereof in vacation," for "the recorder" thus taking from the circuit court the power conferred by the Legislature of 1872-3, and this being the only change made in section 1 of chapter 85 as it existed in the Code of 1868 would seem to make the intention of the lawmakers clear. It will be observed that the Acts of 1882, chapter 68, again re-enacted chapter 87 of the Code and so amended the first section thereof as to make the first clause of it read as follows: "The clerk of every circuit court shall, in a book provided for the purpose, keep a record of any personal representative, guardian, curator, or committee heretofore authorized to act as such under orders of his court; and the clerk of the county court of each county shall keep a like record as to those heretofore or hereafter authorized to act by such court or clerk, and as to those heretofore authorized to act by any recorder of such county," showing clearly that it was the purpose of the Legislature to restrict the record of fiduciaries to be kept thereafter by the clerk of the circuit court to such fiduciaries only as had been authorized prior to that time to act under orders of said circuit court, intentionally leaving out any provisions for fiduciaries to be thereafter authorized by said court. The duties of the clerks of the circuit courts and county courts in that regard were in the act of 1872-3 made identical and under one clause, but by the said Act of 1882 the said restriction was placed upon the clerks of the circuit courts while it required the clerk of the county court to keep a record as to such fiduciaries theretofore or to be thereafter authorized to act by the order of such court or its clerk in vaca-

tion, and also as to such as were before authorized by any record-
er of such county.  These acts considered together clearly re-
veal the fixed purpose of the Legislature of 1882 to repeal the
legislation of 1872-3 conferring probate powers upon the circuit
courts and to give to the county courts and the clerks thereof in
vacation, exclusive probate jurisdiction; this being so it is not
deemed necessary to discuss the contention of appellant bring-
ing in question the constitutionality of said chapter 136, Acts
of 1872-3, because of failure in its title to express the object of
the act.  In Works on "Courts and their Jurisdiction," at page
448, it is said:  "As to purely probate matters involving the pro-
bate of wills and the ordinary administrative proceedings in-
volved in the administration of estates a court of chancery has
no power as a part of its general equity jurisdiction to act.  Such
jurisdiction belonged, in England, to the ecclesiastical courts and
passes by a general grant of probate jurisdiction.  And a grant
of common law and equity jurisdiction does not include juris-
diction in matters of probate."   And in section 315 Paige on
Wills, the writer in speaking of "Orphan's courts, Courts of
Surrogate, Probate Courts, and the like" says:  "Probate juris-
diction is generally exclusively vested in these courts.  When
this is the case equity cannot interfere in matters of probate."

It is contended by counsel for appellee that the injunction was
merely ancillary, awarded for the purpose of preserving the
*statu quo* between the parties, and also of the property until the
final hearing of the chancery cause, and that the circuit court
committed no appealable error in overruling the motion to dis-
solve the injunction, neither party insisting on a hearing of the
main cause, at the time citing *Robrect* v. *Robrect,* 46 W. Va.
738, and other authorities.  The authorities relied upon do not
apply in this cause because of want of jurisdiction in the circuit
court to enjoin the county court from making the appointment
clearly authorized by the statute.  The contention of appellee,
that the action of the county court in appointing Mrs. Sim-
mons executrix would interfere with the action of the circuit
court in its proper proceedings in the main cause, is without foun-
dation, as the change of the administration of the estate could
only apply to such part of the estate as had not been administered
upon at the time of her appointment, and in no particular does it
interfere with the settlement to be made by the administrator,

Stone, of the assets which had gone into his hands, and for which he was seeking a settlement in said suit; and the county court, having exclusive probate jurisdiction, the circuit court could not restrain its action therein. For these reasons the decree of the circuit court in overruling the motion to dissolve the injunction, is reversed and annulled and this Court proceeding to render such decree as the circuit court should have rendered, dissolves the injunction and dismisses the petition of the plaintiff with costs to the defendant.

*Reversed.*