J. W. RITCHIE *v.* S. T. ARMENTROUT *et al.*

(CC 649)

Submitted April 22, 1942. Decided May 26, 1942.

*Ritchie, Hill & Thomas,* for plaintiff.

*E. L. Maxwell, Wm. T. George* and *Wm. T. George, Jr.,* for defendants.

ROSE, JUDGE:

The Circuit Court of Randolph County has certified to this Court the questions of law which arose upon a demurrer to a special plea in a proceeding by way of notice of motion for judgment by J. W. Ritchie against Charles P. Judy and Arthur Cooper, as executors of the will of C. Ed Lukens, deceased, and another.

The record discloses that under date of March 3, 1927, the said C. Ed Lukens and his wife, S. T. Lukens, executed two promissory notes for $1500.00 each payable to one Irving Ritchie and due respectively on February 21, 1929, and 1930. These notes were subsequently, at some time and in some manner not disclosed by the record, assigned to J. W. Ritchie. C. Ed Lukens died August 28, 1936. His wife, S. T. Lukens, subsequently intermarried with one Jasper Armentrout, and is proceeded against herein under the name of S. T. Armentrout. On October 21, 1940, J. W. Ritchie, after having given the statutory notice therefor, moved the Circuit Court of Randolph County for judgment on said notes in the amount of $5,442.00 against the said executors and S. T. Armentrout. The executors pleaded the general issue and filed a special plea, which is the subject of the controversy here.

A demurrer to the special plea was overruled, and, on the joint motion of opposing counsel, the questions arising thereon were certified to this Court.

The special plea, in substance avers that the claim sued on has been adjudicated adversely to the plaintiff in another tribunal of competent jurisdiction in this: That J. W. Ritchie filed before the commissioner of accounts, to whom the estate of C. Ed Lukens had been referred as required by Code, 44-2-1, a claim based upon the same notes on which judgment is now asked, to which claim one of the administrators filed a counter affidavit as required by statute; that on June 4, 1939, a "full hearing" was had on the Ritchie claim, resulting in a finding and report by the commissioner disallowing it in toto; that upon exceptions by Ritchie to the commissioner's report and a hearing before the County Court of Randolph County, these exceptions were overruled, and the report of the commissioner of accounts disallowing the Ritchie claim "affirmed"; and that the "judgment and finding" of the commissioner and the county court are still in "full force."

The demurrer to the special plea was based on three grounds: (1) That the commissioner of accounts and county court had no constitutional jurisdiction to try and determine the validity of a disputed claim against an estate in process of administration before them; (2) that the pretended hearing before the commissioner and the county court, without objection, did not create or confer on those tribunals any jurisdiction; and (3) that the filing of Ritchie's claim before the commissioner of accounts did not affect his right to proceed in a court of law on said claim after confirmation by the county court of the commissioner's report rejecting the claim.

The questions certified by the lower court are:

"I: Has a Commissioner of Accounts and County Court authority to assume jurisdiction of and the power to pass upon a claim filed before a Commissioner of Accounts based upon notes given by a deceased person in his life time and to said claim based upon said notes the executors of the Estate have plead payment?

II: * * * Was the defense set out in Special

Plea No. 1 filed by the Executors of the C. Ed
Lukens Estate to the Notice of Motion for Judg-
ment filed by Ritchie, which plea is based upon
the doctrine of estoppel of election, a good plea
and should the demurrer thereto have been sus-
tained?"

It is unquestionable that our statutes distinctly pur-
port to authorize county courts through their commis-
sioners of accounts to hear and adjudicate claims against
estates of decedents being administered by such courts,
and ascribe to their decisions the precise effect and finality
claimed for them in the special plea. Section 1, article 2,
chapter 44 of the Code mandatorily requires county
courts, upon the qualification of personal representative,
to refer the estate of the decedent to a commissioner of
accounts "for proof and determination of debts and
claims"; section 2 requires such commissioner to publish
a notice requiring all claims to be exhibited before him;
section 6 provides that if a claim is contested, the commis-
sioner shall hear evidence for and against the claim; sec-
tion 16 requires him to make to the county court a report
of all claims allowed; section 19 authorizes the county
court to confirm, modify or reject this report, and creates
the right of appeal to the circuit court, and further pro-
vides that "After the report of the commissioner on the
claims against the estate of any decedent has been con-
firmed by the county court, or the circuit court on ap-
peal, or corrected and confirmed after appeal, the same
shall be forever binding and final."

The question is whether this statutory grant of power,
plainly judicial, is authorized by the constitution.

The constitutional limit and extent of the jurisdic-
tion of county courts is found in Section 24, Article VIII,
and the only provision here pertinent is contained in the
second sentence of that section, which provides that:
"They shall have jurisdiction in all matters of probate, the
appointment and qualification of personal representa-
tives, guardians, committees, curators and the settlement
of their accounts, and in all matters relating to appren-

tices." If county courts have the powers claimed, they must originate in their "jurisdiction in all matters of probate," or in their authorization to make settlement of the accounts of the fiduciaries named.

While the term "probate" in some connections may be limited in meaning to the steps involved in the proving of a will, it more often is understood to include all the ordinary steps and incidents usual and necessary for the administration of estates. *Dibble* v. *Winter,* 247 Ill. 243, 93 N. E. 145; *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382; *Reno* v. *McCully,* 65 Ia. 629, 22 N. W. 902; *In re Miller's Estate,* 216 Pa. 247, 65 A. 681; *In re Guardianship of Strelow,* 116 Neb. 873, 219 N. W. 387; *Chase Nat. Bank* v. *Chicago Title & Trust Co.,* 164 Misc. 508, 299 N. Y. S. 926; *In re Cloward's Estate,* 95 Utah 453, 82 P. 2d 336, 119 A. L. R. 123. Also, the "settlement of the accounts" of a fiduciary is often, if not usually, held to include the determination of claims against the estate involved. 24 C. J., p. 924; 15 C. J., p. 1010. This theory was apparently adopted by this Court in *Stone* v. *Simmons,* 56 W. Va. 88, 48 S. E. 841, in which it is said: "In the State of West Virginia the county courts, and the clerks thereof, in vacation, have exclusive original jurisdiction in all probate matters involving the probate of wills and the ordinary administrative proceedings involved in the administration of estates." In *Page* v. *Huddleston,* 98 W. Va. 104, 126 S. E. 579, this Court said: "By reason of Section 24, Article 8 of the Constitution of West Virginia, and the statutes enacted in pursuance thereto, county courts have original jurisdiction in all matters of probate, the appointment and qualification of personal representatives and the settlement of their accounts, and * * * all such matters, shall in the first instance be adjudicated in the county court."

A statute, similar to the one now in effect, and authorizing the tribunal, which, from time to time, has had jurisdiction of matters of probate, but no jury, to hear and determine, disputed claims against an estate before it for administration has been in effect from the beginning of

this state, originating in the Virginia Code of 1849, Chapter 132, sections 14 to 21. This statutory provision was adopted with the rest of the Virginia Code by our constitution of 1863; it was reenacted in substance, but with changes of details and phraseology, in the Code of 1868, in Chapter 68 of the Acts of 1882, and in the Code of 1931. It was in force under the Virginia Constitution, the constitution of 1863, the constitution of 1872, the amendment thereto of 1880, and thenceforward to this date. This continuing survival of the statute since its origin, and its repeated reenactment indicate a clear legislative understanding that a probate court, acting without a jury, may determine controverted claims against the estate of a decedent before it in process of administration, without violating any constitutional provision. The utilization of this statutory method of adjudicating claims against the estate, continuing thus throughout the entire history of this jurisdiction, constitutes a practical acceptance of this construction of the constitution, by the bar and·public, which cannot be ignored. The fact that we are pointed to no case in which any litigant in this Court has questioned the constitutionality of these statutes is also to be considered.

Further, we are not wholly without judicial suggestion of what this Court would have said if the question had been submitted here. Prior to the Code of 1931, section 14 of chapter 87, Code 1923, required the commissioner, after hearing proof of claims against an estate, to "make out an account of all such debts or demands as may appear to him to be sufficiently proved"; section 18 required him to report "every account stated under this chapter"; section 21 required the county court to confirm, amend or recommit such report; and section 22 provided that "the report, to the extent to which it may be so confirmed shall be taken to be correct, except so far as the same may in a suit in proper time, be surcharged or falsified." No appeal or other method for bringing such proceeding here was provided; hence this Court could never directly review such action of the county court or its commissioner. But

suits to surcharge and falsify such accounts were common, and in no such suit has the constitutional jurisdiction of the county court, through its commissioners, to try claims against an estate being administered by it, been challenged. On the contrary, the right has been here apparently tacitly assumed or taken for granted. In *American Bank & Trust Co.* v. *Douglass,* 75 W. Va. 207, 83 S. E. 920, the county court confirmed the report of the commissioner who had taken proof of claims, and in a subsequent suit to surcharge and falsify that account, this Court held the report so confirmed to be *prima facie* correct, thus implying recognition of the jurisdiction of the court and commissioner so to determine such claims. In *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. 2d 790, we recently held that a commissioner of accounts in attempting to allow a claim against an estate, and the subsequent action of the county court in purporting to confirm such allowance, were nullities by reason of the failure to give certain notices required by the statute and the absence of proof supporting the claim. There is no intimation by the court that if the statute had been strictly complied with, the adjudication of the disputed claim by the commissioner of accounts and the county court would still have been invalid because of want of jurisdiction.

We, therefore, conclude that, as has long been taken for granted and as has been implied heretofore by this Court, a county court, through its commissioner of accounts, has constitutional jurisdiction to try and determine disputed claims presented against the estate of a decedent before the court for administration.

The objection that this statutory procedure is unconstitutional as depriving the claimant of his right to trial by jury is substantial and deserving of consideration. That a county court, composed wholly of non-lawyers, and a commissioner of accounts, who need not be a lawyer, should be vested with such high judicial authority, little comports with our conception of proper judicial procedure. But these considerations cannot prevail. The constitutional provision upon which this judicial machinery is

erected is of equal dignity with that guaranteeing the right of trial by jury, and, having been brought into the constitution by amendment in 1880, while the provision for trial by jury is part of the constitution adopted in 1872, is the later constitutional expression of the will of the people. Moreover, the right to jury trial is merely "preserved," and not created by the constitution. *Lawhead v. Grand Lodge,* 115 W. Va. 475, 176 S. E. 860; *Callan v. Wilson,* 127 U. S. 540, 8 S. Ct. Rep. 1301, 32 L. Ed. 223; *Bowman v. State Entomologist,* 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121; *Tims v. The State,* 26 Ala. 165; *Blanchard v. Raines' Executrix,* 20 Fla. 467; *Ross v. Irving,* 14 Ill. 171; *Allen v. Anderson,* 57 Ind. 388; *Isom v. Mississippi Central Railroad Co.,* 36 Miss. 300; *State v. McClear,* 11 Nev. 39; *Raymond v. Flavel,* 27 Ore. 219, 40 P. 158; *Trigally v. Mayor, etc., of Memphis,* 6 Cold., Tenn. 382. Prior to the creation of the constitutional system in America, all probate matters belonged, not to courts of law, but to ecclesiastical courts, courts of chancery, probate courts, or special tribunals of like character. Works on Courts and Their Jurisdiction, p. 431; Brown on Jurisdiction, p. 346. In such courts, juries were unknown. *Ferris v. Higley* (U. S.), 20 Wall. 375, 22 L. Ed. 383; *In re England's Estate,* 214 Cal. 298, 5 P. 2d 428; *In re Price's Will,* 204 App. Div. 252, 197 N. Y. S. 778; *Stratton v. Rice,* 66 Colo. 407, 181 P. 529; *Schmidt v. Schmidt,* 47 Minn. 451, 50 N. W. 598; *Fuller v. Sylvia,* 240 Mass. 49, 133 N. E. 384; *Moody v. Found,* 208 Ill. 78, 69 N. E. 831. Therefore, a party to a proceeding before such a court had not, before our constitutional era, any right to jury trial to be preserved by that instrument.

But a creditor of a decedent's estate at common law had the alternative right to bring his action at law against the personal representative. This right is preserved in Code, 44-1-22: "A personal representative may sue or be sued upon any judgment for or against, or any contract of or with, his decedent." And, as above pointed out at the time of the adoption of our present constitution in 1872, as well as when our original constitution was adopted in

1863, the statutory law theretofore in effect authorized the determination of claims against a decedent's estate in precisely the manner now prescribed for county courts. These statutory provisions have been in the Code of the Virginias since 1849, and were reenacted immediately after the adoption of the constitutional amendment of 1880. The plaintiff here might freely have maintained the present proceeding and had his trial by jury if he had so chosen. No constitutional provision, no statute, no decision of court, forbade him. But the law also offered him alternative remedies, one of which he saw fit to adopt. He, therefore, has not been deprived of a trial by jury, but has simply decided voluntarily to prosecute his claim in a tribunal which operates without a jury. This tribunal determined his claim adversely to him, and he would now repudiate the court he invoked and begin anew in another whose doors were open to him from the beginning. This he will not be permitted to do. He can no more evade the finality of the county court's order against him than he could that of a chancery court which had in a proper suit, without a jury, adjudicated his claim. He has had his day in a court which he freely chose, with full knowledge that it could afford him no jury and that its decision must be final unless appealed from. He is entitled, in conscience and in law, to nothing more. *Bright* v. *Mollohan,* 75 W. Va. 116, 83 S. E. 298; *Magill* v. *Manson,* 20 Gratt. 527; 28 C. J. S., Election of Remedies, sec. 14 p. 1087.

No defect in the form of the special plea is suggested. Accordingly, we answer that the commissioner and county court have the authority described in question "I," and that the special plea mentioned in question "II" is sufficient and the demurrer thereto properly overruled.

The judgment of the Circuit Court of Randolph County is, therefore, affirmed.

*Affirmed.*