M. F. GAPP *et al. v.* M. F. GAPP *et al.*

(No. 9558)

Submitted April 11, 1944. Decided June 13, 1944.

*E. L. Judy* and *H. G. Muntzing,* for plaintiffs in error.
*Ralph J. Bean,* for defendants in error.

LOVINS, JUDGE:

M. F. Gapp and Dora E. Gapp, his wife, prosecute this writ of error to a judgment of the Circuit Court of Hardy County which denied a recovery against the committee and from the estate of Frank Gapp, an insane person, on an unliquidated and disputed claim for personal services.

Frank Gapp conveyed to M. F. Gapp and Dora E. Gapp, his wife, all of his real estate and part of his personal property by deed bearing date August 18, 1939, setting

forth a monetary consideration of $9,600.00, payable in twelve equal annual installments. The deed contains the following language: "* * * and in further consideration that said first party is to have a home on the real estate hereinafter conveyed and to have the same care and treatment from said second parties he now receives from them, but said second parties are not to be responsible for doctor bills and clothes,* * *."

Frank Gapp, an uncle of M. F. Gapp sixty-five years of age, for several years prior to August 18, 1939, resided with M. F. Gapp and his wife, under an arrangement whereby they lived on Frank Gapp's farm and maintained a home for him, he paying one-half of the grocery bills and one dollar a month for washing his clothes. During this period Frank Gapp suffered from rheumatism and other diseases affecting his genito-urinary organs, but which did not confine him to bed or render him incapable of taking his meals at the table and attending to his other personal needs.

On August 18, 1939, Frank Gapp required the services of a physician, who testified that his then physical condition was not good, but that "mentally he was in good shape." On the day following the execution of the deed he became so seriously afflicted that he was confined to bed and remained bedridden for about six months during which time he had no control over his processes of elimination, which necessitated frequent changes of bedclothing. At times he became violent, restraint was necessary, and his condition was such that throughout day and night some person was required to attend him or be within hearing distance to minister to his needs. At the end of six months, he gradually improved, staying out of bed for a few hours daily, thus eliminating in some degree the care and attention theretofore required. The nursing care and treatment required were performed by M. F. Gapp and his wife, aided by persons employed and paid by M. F. Gapp.

Frank Gapp's lack of mental capacity having become evident, M. F. Gapp and Anton Keller were appointed and

qualified as committee for him as an insane person. The appointment was made in August, 1940, but the date of the adjudication of insanity at some time prior thereto is not disclosed by the record. On May 16, 1941, the County Court of Hardy County, upon request and by agreement of counsel, appointed a special commissioner of accounts "for the purpose of Auditing and settling the accounts due said Committee". Shortly thereafter M. F. Gapp and his wife presented to the special commissioner of accounts their joint claim in the sum of $743.00 for care, treatment and maintenance of Frank Gapp beyond that which he received prior to the execution of the aforesaid deed.

From an analysis of the claim it appears that Gapp and his wife assert that the committee was indebted to them for 184 days at the rate of $1.50 a day and 467 days at the rate of $1.00 a day. The period for which services are claimed ended May 31, 1941. The claim is predicated upon the theory that the care and treatment necessarily rendered Frank Gapp by claimants after the execution of the deed exceeded the services contemplated by the provisions of the deed. The special commissioner of accounts reported that claimants were entitled to recovery for 651 days at the rate of $1.00 per day, being the total number of days for which claimants demanded compensation. Upon consideration of the report and exceptions thereto the county court reduced claimants' recovery from $1.00 a day to 80c a day, and entered judgment that claimants recover $520.80. A writ of error to the judgment of the County Court of Hardy County was awarded by the circuit court of that county, and upon a hearing in the latter court, an order was entered denying any recovery on the theory that the services rendered by claimants during the illness of Frank Gapp were contemplated by the deed.

The county court's lack of jurisdiction of the subject matter is not formally raised by cross-assignment of error, but that question was before the circuit court when this proceeding was there on writ of error. The circuit court held that the county court had jurisdiction of the

subject matter, but denied recovery on the ground hereinabove indicated. The absence of a formal assignment of error challenging jurisdiction of the subject matter does not preclude this Court from taking cognizance of the lack of such jurisdiction when, as here, the question fairly arises on the record. It then becomes our duty to consider and correct an adjudication erroneously made. *Buskirk* v. *Ragland,* 65 W. Va. 749, 752, 65 S. E. 101; *Cresap* v. *Kemble,* 26 W. Va. 603, 606. The appointment of a special commissioner of accounts on the request and by the consent of the litigants, and subsequent litigation before that official respecting this claim do not confer jurisdiction of the subject matter by consent of the parties. *Nelson* v. *Nash,* 126 W. Va. 568, 29 S. E. 2d 253.

The jurisdiction of county courts of "all matters of probate, the appointment and qualification of * * * committees, * * * and the settlement of their accounts * * *" is conferred by Article VIII, Section 24, Constitution of West Virginia; and the same constitutional provision permits county courts to exercise "such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law. * * *." The jurisdiction so conferred cannot be taken away by legislative enactment, but the Legislature within the letter and spirit thereof may prescribe the minutiae of its exercise, which has been done by enactment of pertinent statutes.

This Court has recently considered and determined questions pertaining to the jurisdiction of county courts concerning decedents' estates, and for the purpose of the distinction to be presently made we advert to some of those holdings. We have held that a county court has jurisdiction to hear and determine a disputed claim against the estate of a decedent based on promissory notes. *Ritchie* v. *Armentrout,* 124 W. Va. 399, 20 S. E. 2d 474; and that a county court may adjudicate a claim made by a child for services and support of a parent. *In Re Estate of John Gilbert,* 115 W. Va. 599, 177 S. E. 529. But we have also held that a county court in administering a decedent's estate does not have jurisdiction to construe a deed, will

or contract, *In Re Brown's Estate,* 123 W. Va. 504, 16 S. E. 2d 801; that under Article VIII, Section 24, Constitution of this State, there is no jurisdiction in county courts to adjudicate conflicting claims to personal property included in a decedent's estate, *In re: Long's Estate,* 122 W. Va. 473, 10 S. E. 2d 791; *Steber* v. *Combs,* 121 W. Va. 509, 5 S. E. 2d 420; that the contruction of a will is not within the jurisdiction of a commissioner of accounts, *Hustead* v. *Boggess,* 122 W. Va. 493, 12 S. E. 2d 514; and that Code, 44-2, confers no jurisdiction on a county court to determine questions pertaining to the rights of inheritance and distribution. *Hansbarger* v. *Spangler,* 117 W. Va. 373, 185 S. E. 550. For discussions of other aspects of the jurisdiction conferred on county courts by the Constitution, see *Page* v. *Huddleston,* 98 W. Va. 104, 126 S. E. 579; *Stone* v. *Simmons,* 56 W. Va. 88, 48 S. E. 841.

It will be seen from the foregoing authorities that even with the constitutional provisions and the detailed legislative enactments in pursuance thereof, the jurisdiction of county courts relative to claims against a decedent's estate is circumscribed.

The powers and duties of the committee of an insane person with respect to the estate in his charge are distinguishable from those of an executor or administrator of the estate of a deceased person. The committee of an insane person is required to take possession of the estate of his ward and "may sue and be sued in respect thereto and for the recovery of debts due to and from such person". The personal estate of a demented person may be applied by the committee to the payment of debts; the income, as well as the residue of the personal estate, may be used for the support and maintenance of the insane person and his family; and the residue must be surrendered to the owner in the event of his restoration to sanity, but if death ensues before such restoration, such residue passes to the persons entitled thereto under the law or a valid will. Code, 27-9-4. The Supreme Court of Appeals of Virginia, in applying a statute substantially the same as the statute of this state above cited, held: "A committee is

appointed for the purpose of securing.a competent person to manage the property of an incompetent adult. The ownership of the property remains in the incompetent; its management alone is transferred to another for preservation and such wise expenditure as may be most beneficial to the incompetent owner". *Shands* v. *Shands,* 175 Va. 156, 7 S. E. 2d 112.

A personal representative of a decedent takes a qualified title to the property of the estate from which debts are paid, and thereafter the residue of the property is turned over to the persons entitled thereto under the statutes of descent and distribution, or if there is a will, to the persons taking as devisees and legatees. A commissioner of accounts has authority to receive disputed claims against the estate of a decedent, and to hear evidence respecting the same, Code, 44-2-1, 6. But such jurisdiction is not conferred as to contingent or unliquidated claims. Code, 44-2-8.

We find no statute relating to the administration of the estate of an insane person or to the duties of a committee thereof which gives the county court jurisdiction to adjudicate disputed and unliquidated claims against the committee and estate of such person.

Formerly the word "probate" related solely to the proof of a will, but by modern judicial construction it has been extended so as to include the usual incidental and ordinary matters involved in the administration of estates. *Ritchie* v. *Armentrout, supra.* But the constitutional provision giving county courts jurisdiction in matters of probate does not *ex vi termini* confer jurisdiction on county courts to adjudicate unliquidated and disputed claims against an insane person's committee.

As to the accounts of the committee of an insane person, we think that the commissioner of accounts has no power other than to audit same and approve or disapprove the expenditures made by such committee. A person having an unliquidated and disputed claim against a committee who desires to enforce the same is required to proceed in a court having general judicial powers. The

county court being without jurisdiction of the subject matter in the first instance, it follows that the Circuit Court of Hardy County was likewise without jurisdiction. *In Re Brown, supra.*

Accordingly, the order of the Circuit Court of Hardy County is set aside and this proceeding is dismissed, without prejudice.

*Judgment set aside; proceeding dismissed.*