736 S.E.2d 61

**Delores HOSE, on behalf of K.M.H. and P.M.H., Plaintiffs**

**v.**

**The ESTATE OF Larry B. HOSE; Anthony L. Hose, Individually, and as Administrator of the Estate of Larry B. Hose; Linda C. Hose, Susan E. Cunningham; and Shaney Rollison, Defendants.**

**No. 11–1400.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 17, 2012.

Decided Nov. 9, 2012.

Kirk H. Bottner, Bottner & Skillman, Charles Town, WV, for Plaintiffs.

James T. Kratovil, Kratovil Law Offices, Charles Town, WV, for Defendant, Shaney Rollison.

DAVIS, Justice:

This matter is before the Court based upon two certified questions from the Circuit Court of Berkeley County. The certified questions ask this Court to determine whether an affidavit was sufficient to give notice of a claim against the estate of Larry B. Hose and whether the circuit court had subject matter jurisdiction over the complaint filed in this case. We find that the affidavit was sufficient in giving notice of a claim against the estate and that the circuit court has subject matter jurisdiction over the complaint.

I.

## FACTUAL AND PROCEDURAL HISTORY

The record in this case shows that, in 1997, a Pennsylvania court granted permanent custody of P.M.H. and K.M.H., (hereinafter "Plaintiffs"),[1] to their maternal grandfather, Larry B. Hose (hereinafter "Mr. Hose"), and their step-grandmother, Delores F. Hose (hereinafter "Ms. Hose"). At the time of the custody transfer, the Hoses lived in Martinsburg, West Virginia.[2] On or about July 2, 2003, the Department of Health and Human Services (hereinafter "DHHR") filed an abuse and neglect petition against the Hoses. In the petition, DHHR alleged that Mr. Hose sexually and physically abused the Plaintiffs.[3] The circuit court entered an order on the same day that the petition was filed granting DHHR temporary custody of the Plaintiffs.

On July 19, 2003, Mr. Hose died without leaving a will. Mr. Hose left behind four adult children who were the heirs to his estate: Susan Cunningham, Linda Hose, Anthony Hose, and Shaney Rollison.[4] Anthony Hose was appointed the administrator of the estate.

On or about November 21, 2003, the circuit court in the abuse and neglect proceeding granted Delores Hose limited temporary custody of P.M.H. and K.M.H. The order stated that custody was "for the limited purpose of pursuing a legal action against the Estate of Larry B. Hose on behalf of the minor children." Around the time of the custody transfer, Delores Hose, through counsel, filed an affidavit with the Clerk of the Berkeley County Commission. The affidavit stated that the estate of Larry B. Hose was indebted to P.M.H. and K.M.H. for damages caused by sexual and physical abuse.

1. Because of the sensitive nature of some of the facts in this case, we will refer to the Plaintiffs by their initials. At the time of the custody transfer, P.M.H. was four years old and his sister, K.M.H., was two years old.

2. The parental rights of the natural mother of the Plaintiffs were terminated. The whereabouts of the natural father apparently were never determined.

3. At the time the abuse and neglect petition was filed, Mrs. Hose had a divorce proceeding pending. A family court judge entered an order on July 3, 2003, granting Mrs. Hose a divorce from Mr. Hose.

4. The record indicates that Shaney Rollison was an adopted daughter.

By letter dated December 3, 2003, counsel for Plaintiffs notified Anthony Hose, through counsel, that the Plaintiffs were sexually abused by Larry B. Hose and that the Plaintiffs were willing to negotiate a settlement of their claim against the estate. By letter dated December 12, 2003, counsel for Anthony Hose responded to the Plaintiffs' letter. The response letter indicated that insufficient evidence was submitted to evaluate the legitimacy of the Plaintiffs' claim. In a letter dated December 17, 2003, counsel for the Plaintiffs informed counsel for Anthony Hose that the sexual abuse claims had been substantiated through an investigation by DHHR and the State Police.

The record indicates that on April 1, 2004, the Berkeley County Commission approved the final accounting of Larry B. Hose's estate. Shortly thereafter, most of the assets of the estate were distributed to the heirs. On August 25, 2004, the Plaintiffs filed the instant action against Anthony Hose, individually, and as administrator of the estate of Larry B. Hose. The complaint alleged that the Plaintiffs were sexually and physically abused by Larry B. Hose, and that the estate of Larry B. Hose was closed through fraudulent conduct without an accounting for the claim the Plaintiffs had against the estate. At some point after the complaint was filed, Susan Cunningham, Linda Hose, and Shaney Rollison were added as defendants.[5]

The record reveals that an order was entered on November 3, 2006, granting the Plaintiffs default judgment as to liability against Anthony Hose, individually, and as administrator of the estate of Larry B. Hose. On that same date, a separate order was entered that granted the Plaintiffs a default judgment as to liability against Susan Cunningham and Linda Hose.

On April 1, 2008, a bench trial was held on the issue of liability, but not damages, against Shaney Rollison. The trial court entered an order on April 14, 2008, finding Shaney Rollison liable to the Plaintiffs.

Although it appears from the record that this case was at the stage of holding a trial on the issue of damages, the circuit court, in considering a motion to dismiss by the defendants, certified the following two questions to this Court: [6]

QUESTION # 1: Did the Fiduciary Supervisor properly refuse to accept Ms. Delores Hose's affidavit as any type of legally cognizable claim against the Estate of Larry Brown Hose?

CIRCUIT COURT'S RULING: Yes. The requirements as to form of claims is mandatory and the affidavit alone, apart from the fact that there was no filing fee submitted, is insufficient as a matter of law.

QUESTION # 2: Upon the facts of this case as set forth above, does the Circuit Court lack subject matter jurisdiction over the issues raised in the Complaint?

CIRCUIT COURT RULING: Yes. The County Commission has sole original jurisdiction of the settlement of estates. Although the damages action against Decedent, Larry B. Hose, survived his death, it was mandatory that Plaintiffs either file a legally cognizable claim within the Estate or have filed a civil action for the same while the Estate was still open. Further, the failure to file exceptions to the Final Account and/or the failure to file a timely appeal of the settlement of the estate is fatal to all of Plaintiffs' claims.

## II.

## STANDARD OF REVIEW

This Court recognized in Syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996), that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Likewise, a *de novo* standard of review governs the interpretation of any statutory provision as it involves a purely legal question. Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't,*

---

5. At some point, Delores Hose also was made a defendant. However, she was eventually dismissed and substituted as the Next Friend of the Plaintiffs in the style of the case.

6. It will be noted that Shaney Rollison filed a summary response brief. No other defendant filed a brief.

195 W.Va. 573, 466 S.E.2d 424 (1995). Applying this plenary standard of review, we proceed to address the certified questions.

## III.

## DISCUSSION

The instant proceeding presents two certified questions for our consideration. We will address and answer them in turn.

### A. Certified Question 1

The first certified question asks this Court to determine whether the Berkeley County Fiduciary Supervisor properly refused to accept Delores Hose's affidavit as any type of legally cognizable claim against the estate of Larry B. Hose.[7] The Plaintiffs have indicated that resolution of this issue is governed by the probate statute W. Va.Code § 44-3A-9 (1982) (Repl.Vol.2010).[8]

We begin by observing a few basic rules of statutory construction. We have held that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). "[W]e have a duty to apply the statute as written when its terms are not ambiguous." *Mingo County Redev. Auth. v. Green*, 207 W.Va. 486, 490, 534 S.E.2d 40, 44 (2000). As the Court stated in Syllabus point 5 of *State of West Virginia v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959), "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." *See also* Syl. pt. 1, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretive inquiry is to ascertain the legislative intent.").

The relevant language of W. Va.Code § 44-3A-9 provides as follows:

Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate, ... and on which at the time of his death the liability is still contingent or unliquidated, the claimant ... shall have the right to file with the fiduciary supervisor at the time provided for in the notice, proof of his claim in the same manner as other claims, *stating in*

7. Although we will address the first certified question, this Court is concerned about the potential mootness of the issue presented by it. The record submitted to this Court indicated that at least four judges presided over this case (during oral argument it was said that at least seven judges may have presided over the case). The current judge assigned to the case, who also is the judge certifying the instant questions to this Court, is the Honorable Thomas W. Steptoe, Jr. It appears that the Honorable Christopher C. Wilkes had previously entered orders granting default judgment on liability against Susan Cunningham, Linda Hose, and Anthony Hose, individually, and as the administrator of the estate of Larry B. Hose. A subsequent order was entered by the Honorable Gina Groh, which denied a motion by one of the defendants to set aside the default judgment. Judge Groh eventually presided over the bench trial that found Shaney Rollison liable to the Plaintiffs. During oral argument, counsel for Shaney Rollison indicated that the liability judgment against her was set aside. However, there is nothing in the record to show that any of the orders finding all of the defendants liable to the Plaintiffs were set aside. If the liability orders are in fact still in place, then the first certified question is not properly before this Court because that question necessarily was resolved against the defendants through the liability orders. However, since this Court is not certain that it has a complete record of all orders entered in this case, we will address the first certified question. We wish to make clear that our answer to the first certified question is not grounds to disturb the liability orders if they have not previously been set aside.

8. It should be noted that West Virginia has two probate systems: W. Va.Code § 44-2-1 *et seq.*, as amended (2004) (old system) and W.Va.Code § 44-3A-1 *et seq.* (1982) (new system). *See* Karl Warden, *"Description of West Virginia's New Probate System,"* 85 W. Va. L.Rev. 393 (1983) (discussing the differences in the two systems). The Plaintiffs have indicated that W. Va.Code § 44-3A-1 *et seq.* is the probate system that Berkeley County follows. In addition to some language in the circuit court's order that supports the Plaintiff's contention, there are pleadings in the record indicating Plaintiffs litigated the case under W. Va.Code § 44-3A-1 *et seq.* Insofar as the substance of the statutes relied upon by the Plaintiffs are also contained in the old probate system, W. Va.Code § 44-2-1 *et seq.*, our analysis and conclusion would be the same under either system.

*his affidavit the facts upon which such contingent or unliquidated liability is based and the probable amount thereof.*

(Emphasis added).

▮ We do not find the pertinent language of this statute to be ambiguous in the context of the facts of this case. The statute succinctly requires an affidavit to set out facts that a claimant relies upon to assert a contingent or unliquidated claim exists against an estate and the probable amount of the claim.

In the instant proceeding, the Plaintiffs, through their legal guardian Delores Hose, filed an affidavit with the Clerk of the Berkeley County Commission indicating that the Plaintiffs were victims of sexual and physical abuse by the decedent and that, as a result of such tortuous conduct they have a contingent claim against the estate in the amount of $500,000.00.[9] The circuit court found that the affidavit was insufficient as a matter of law and that the Fiduciary Supervisor could refuse to accept the affidavit.[10] We disagree.

To fully address the first certified question requires this Court to dissect and analyze it in two parts: (1) sufficiency of the affidavit and (2) the authority of the Fiduciary Supervisor to refuse to accept the affidavit.

▮ **1. Sufficiency of the affidavit.** As we previously noted, and now hold, in order to assert a contingent or unliquidated claim against an estate, W. Va.Code § 44–3A–9 (1982) (Repl.Vol.2010) requires that an affi-

davit be filed setting out facts that give notice of the nature of the claim and the probable amount of the claim. The affidavit submitted on behalf of the Plaintiffs satisfied the requirements of the statute. The affidavit set out the facts necessary to provide notice of the nature of the claim against the estate. No more was required. *See, e.g., M.W. Kellogg Co. v. Concrete Accessories Corp.,* 157 W.Va. 763, 772, 204 S.E.2d 61, 67 (1974) ("All that the pleader is required to do under Rule 8(a) is set forth sufficient information to outline the elements of his/her claim or to permit inferences to be drawn that these elements exist. Rule 8(a) contemplates a succinct complaint containing a plain statement of the nature of the claim together with a demand for judgment."). To be clear, W. Va.Code § 44–3A–9 does not demand a treatise be written to outline a contingent claim. The statute contemplates facts that are sufficient to give notice of the claim. The Plaintiffs' affidavit did this.

**2. The authority of the Fiduciary Supervisor to refuse to accept the affidavit.** The circuit court found that the Fiduciary Supervisor could refuse to accept the affidavit on the grounds that it was insufficient in giving notice of a claim. We have already determined that the affidavit was sufficient. Even so, assuming for the sake of argument that the affidavit was insufficient in providing adequate notice of a claim, we have not found any language in W. Va.Code § 44–3A–9 [11]

9. It will be noted that the affidavit actually referred to W. Va.Code § 44–2–8, which is the old probate law. The reference to that statute is of no moment, however, because the pertinent requirements of W. Va.Code § 44–3A–9 are also set out under W. Va.Code § 44–2–8.

10. The circuit court also noted that the Plaintiffs did not tender a filing fee. To the extent a filing fee was required, the Clerk's office had a duty, at a minimum, to inform the Plaintiffs that a fee was due and owing. The Plaintiffs have indicated that they did not learn about the filing fee until the case was in litigation.

11. The full text of W. Va.Code § 44–3A–9 provides as follows:

Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate, or an outstanding bond, recognizance or undertaking upon which the

deceased shall have been principal or surety or indemnitor, and on which at the time of his death the liability is still contingent or unliquidated, the claimant or the surety shall have the right to file with the fiduciary supervisor at the time provided for in the notice, proof of his claim in the same manner as other claims, stating in his affidavit the facts upon which such contingent or unliquidated liability is based and the probable amount thereof. When so filed there shall be no distribution of the assets of the estate, except as otherwise provided in this article, without the reservation of sufficient moneys to pay, when the amount is finally determined, such contingent or unliquidated claim, or a proportion thereof equal to what is paid to other creditors of the same class. If such liability becomes fixed before the fiduciary supervisor or fiduciary commissioner, as may be, completes his report, then evidence of the same may be filed with such clerk or commissioner in lieu of the contingent

that gives the Fiduciary Supervisor authority to summarily refuse to acknowledge the filing of an affidavit.[12]

Although there is no statute providing for an objection specifically to a claim under W. Va.Code § 44–3A–9, the procedure for contesting and disallowing a claim against an estate in general is set out under W. Va.Code § 44–3A–7 (1982) (Repl.Vol.2010).[13] Pursuant to this statute the personal representative of an estate, a distributee, or a legatee may file a counter affidavit denying a claim in whole or in part. The statute indicates that when such a counter affidavit is filed, the Fiduciary Supervisor must refer the matter to a Fiduciary Commissioner. It is the duty of the Fiduciary Commissioner to hold a hearing to determine the validity of a claim. *See* Syl. pt. 1, in part, *In re Hardin's Estate,* 158 W.Va. 614, 212 S.E.2d 750 (1975) ("Where a counter affidavit has been filed denying the validity of a claim against an estate, it is incumbent upon the person asserting the validity of the claim to prove it[.]"). The Fiduciary Commissioner is authorized under W. Va.Code § 44–3A–7 to reject a claim.

The significance of W. Va.Code § 44–3A–7 is three-fold. First, it does not grant the Fiduciary Supervisor authority to reject a claim. Second, the statute requires a claim be objected to by specific persons, which do not include the Fiduciary Supervisor. Third, when a proper objection is made to a claim, the claimant must be given an opportunity to provide additional information to prove a claim at a hearing.

■ In the final analysis, we have found no statute that permits the Fiduciary Supervisor to summarily reject an affidavit on sufficiency grounds. The general scheme of the probate statutes reflect a legislative intent that a claimant be given notice and an opportunity to be heard before a claim is rejected on its merits. Thus, even if the Fiduciary Supervisor had authority to reject the affidavit, due process principles would require giving the Plaintiffs notice and an opportunity to be heard before such rejection occurred.

### B. Certified Question 2

The second certified question asks this Court to determine whether the circuit court lacks subject matter jurisdiction over the

---

claim herein provided for, and such claim as fixed shall be a debt of the estate.

**12.** Under W.Va.Code § 44–3A–4 (1999) (Repl. Vol.2010), a Fiduciary Supervisor is granted authority to refuse to accept claims against an estate that are untimely filed. *Accord* W. Va. Code § 44–2–1 (2004) (Repl.Vol.2010).

**13.** The requirements of W. Va.Code § 44–3A–7 are as follows:

Every claim so itemized, so accompanied by proper vouchers, and so verified, shall be taken to be proved, and shall be allowed, unless before the fiduciary supervisor shall make up his report of claims, the personal representative or a distributee, or a legatee, or, in the case of estates that appear to be insolvent, a creditor, shall file before such clerk a counter affidavit, denying the claim in whole or in part. When said counter affidavit is so filed the fiduciary supervisor shall forthwith refer the matter to a fiduciary commissioner, the provisions of section five of this article notwithstanding, who shall within ten days of the receipt of the reference fix a time and place for hearing evidence for and against such claim and give reasonable notice of such time and place to the claimant, the party objecting, and the personal representative. If such fiduciary commissioner, having held such hearing, does not allow any such claim, the claimant shall pay the expenses of having the testimony adduced at such hearing recorded and/or transcribed. The commissioner, in the exercise of his sound discretion, may require that the claimant post a bond or other security sufficient to pay the estimated cost of having such testimony recorded and transcribed as a condition precedent to holding such hearing. If such claim, having been disallowed by the commissioner, subsequently shall be allowed as a claim against the estate, the claimant shall be entitled to recover from the estate the expenses so paid. Claims for funeral expenses shall be made and determined in the same manner as any other claims. If such estate is referred to a fiduciary commissioner for the sole purpose of determining the allowance of a claim and for no other purpose, the order of reference to such commissioner shall be withdrawn upon receipt of the commissioner's report with respect thereto. If such estate in its entirety be referred to such fiduciary commissioner then such commissioner shall retain general supervision of the matter until such time as he would otherwise be relieved of the same as provided in section four of this article.

The same is recognized under the old probate law. *See* W. Va.Code § 44–2–6 (1959) (Repl.Vol. 2010).

issues raised in the complaint. The circuit court indicated that it did not have jurisdiction for three reasons: (1) the County Commission has exclusive jurisdiction of all matters involved in the settlement of estates; (2) it was mandatory that the Plaintiffs either file a legally cognizable claim with the estate or have filed a civil action for the same while the estate was still open; and (3) the Plaintiffs failed to file exceptions to the final report and/or failed to file a timely appeal of the settlement of the estate. We disagree with each of the reasons cited by the circuit court for determining it lacked subject matter jurisdiction.

■ **1. The County Commission does not have exclusive jurisdiction of all matters involved in the settlement of estates.** To begin, the circuit court erroneously found that County Commissions have exclusive jurisdiction over all matters pertaining to the estate of a decedent. This Court, for example, has "held that a county [commission] in administering a decedent's estate does not have jurisdiction to construe a deed, will or contract[.]" *Gapp v. Gapp*, 126 W.Va. 874, 877–78, 30 S.E.2d 530, 532 (1944). Further, the Legislature has provided several statutes that authorize actions in circuit court involving an estate. For example, under W. Va. Code § 44–3A–16 (1982) (Repl.Vol.2010), the personal representative of an estate is authorized to commence a civil action in the name of the estate, and any defendant in the same action may file a counterclaim against the estate.[14] It is provided by W. Va.Code § 44–3A–29 (1982) (Repl.Vol.2010) that an action may be instituted against a personal representative of an estate to compel payment of a claim.[15] Under W. Va.Code § 44–3A–33 (1982) (Repl.Vol.2010), an action may be brought against distributee and legatees of an estate.[16] Finally, this Court has long recognized an action against the representative of an estate on the bond required by W. Va.Code § 44–1–6 (1923) (Repl.Vol.2010).

*See State ex rel. Harper–Adams v. Murray,* 224 W.Va. 86, 680 S.E.2d 101 (2009) (action against administrator of estate and bond surety for breach of duty); *Lauderdale v. Neal,* 212 W.Va. 184, 569 S.E.2d 431 (2002) (same); *Hensley v. Copley,* 122 W.Va. 621, 11 S.E.2d 755 (1940) (same).

■ In the instant proceeding, the complaint filed in this case set out two types of claims for relief. First, the complaint set out a cause of action against the estate for damages caused by the sexual and physical abuse of the Plaintiffs by Larry B. Hose. As to this first cause of action, which was initially submitted as a contingent claim against the estate, this Court previously has recognized that circuit courts have jurisdiction over contingent or unliquidated claims against an estate. *See Gapp v. Gapp,* 126 W.Va. 874, 879, 30 S.E.2d 530, 532 (1944) ("A commissioner of accounts has authority to receive disputed claims against the estate of a decedent, and to hear evidence respecting the same. But such jurisdiction is not conferred as to contingent or unliquidated claims."). Second, the complaint set out a cause of action alleging fraudulent conduct in settling the estate without setting aside funds for the contingent claim. This cause of action is also a matter that is within the jurisdiction of the circuit court. *See Tabler v. Weller,* 176 W.Va. 267, 342 S.E.2d 234 (1986) (beneficiaries sued executor for acting improperly in liquidating interest-bearing bonds and placing proceeds in noninterest-bearing checking account); *Latimer v. Mechling,* 171 W.Va. 729, 301 S.E.2d 819 (1983) (plaintiff did not have standing as beneficiary or distributee of deceased, but he had interest in estate sufficient to give him standing to sue).

■ **2. The civil action did not have to be filed while the estate was still open.** The circuit court found that the Plaintiffs should have filed a civil action while the

---

**14.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–16 (1982) (Repl. Vol.2010).

**15.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–24 (1982) (Repl. Vol.2010).

**16.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–27 (1988) (Repl. Vol.2010).

estate was still open.[17] This finding has no merit. The Legislature has provided specifically for the disposition of estate funds for a contingent claim under W. Va.Code § 44–3A–20 (1982) (Repl.Vol.2010)[18] and W. Va. Code § 44–3A–30 (1982) (Repl.Vol.2010).[19] It is provided under W. Va.Code § 44–3A–20 that "[t]he fiduciary supervisor ... in his report on claims shall direct the personal representative to withhold from distribution to beneficiaries sufficient assets to take care of such contingent and unliquidated claims[.]" The disposition of the funds required to be set aside under W. Va.Code § 44–3A–20 is addressed in W. Va.Code § 44–3A–30.

It is initially stated under W. Va.Code § 44–3A–30 that

> if an estate is otherwise ready for final settlement and the personal representative holds any sum or sums of money necessary for the payment or distribution of any contingent ... claim, which cannot be paid ... for any ... reason, he may, with the consent of the fiduciary supervisor ... pay such sum ... to the general receiver of the circuit court in the county in which the estate is being administered.

The statute states further that "[a]ny person entitled to any funds paid to a general receiver of a circuit court ... may petition the circuit court in a summary proceeding for an order directing the distribution of such funds." *Id.*

It is clear to this Court that, read together, W. Va.Code § 44–3A–20 and W. Va.Code § 44–3A–30 demonstrate that the Plaintiffs did not have to file their lawsuit prior to the estate being closed. Those statutes expressly contemplate a contingent claim not being resolved until after an estate has been settled. Ultimately, the only relevant inquiry involved with the filing date of a claim against an estate is the running of the statute of limitations on the action—which is not at issue in this case.

**3. The conduct of the estate administrator and the Fiduciary Supervisor prevented the Plaintiffs from filing exceptions to the final report and filing a timely appeal of the settlement of the estate.** The circuit court also ruled that the failure of the Plaintiffs to file exceptions to the final report and/or the failure to file a timely appeal of the settlement of the estate was fatal to their claims.[20] We disagree.

It is true that W. Va.Code § 44–3A–21 (1982) (Repl.Vol.2010) provides for an interested person to file exceptions to a Fiduciary Supervisor's final report.[21] However, this statute requires the Fiduciary Supervisor to provide notice of the final report to all interested persons. The Plaintiffs, as interested persons who filed a contingent claim, were never notified of the final report as required by W. Va.Code § 44–3A–21. Moreover, W. Va.Code § 44–3A–22 (1982) (Repl.Vol.2010) permits an interested person to file an appeal of the County Commission's confirmation of the final report.[22] However, because the Plaintiffs were not timely informed of the confirmation, they could not file a timely appeal.[23]

---

**17.** The circuit court also ruled that it was mandatory that the Plaintiffs file a legally cognizable claim. We have already dealt with this issue and determined that the Plaintiffs did, in fact, file a legally recognizable claim with the Clerk of the County Commission.

**18.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–17 (1982) (Repl. Vol.2010).

**19.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–24a (1982) (Repl. Vol.2010).

**20.** These two issues are actually moot insofar as the liability judgments against the defendants have not been set aside. The issues are moot because the judgments necessarily resolved both issues against the defendants.

**21.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–18 (1982) (Repl. Vol.2010).

**22.** The same is recognized under the old probate law. *See* W. Va.Code § 44–2–19 (1982) (Repl. Vol.2010).

**23.** *See* W. Va.Code § 58–3–4 (1923) (Repl.Vol. 2012) (petition for appeal to circuit court from county commission final decision must be presented within four months after such decision).

## IV.

### CONCLUSION

After considering the certified questions from the Circuit Court of Berkeley County, we respond as follows:

**Certified Question Number 1:** Did the Fiduciary Supervisor properly refuse to accept Ms. Delores Hose's affidavit as any type of legally cognizable claim against the Estate of Larry Brown Hose?

**Answer:** No.

**Certified Question Number 2:** Upon the facts of this case as set forth above, does the Circuit Court lack subject matter jurisdiction over the issues raised in the Complaint?

**Answer:** No.

Certified Questions Answered.