695 S.E.2d 879

**STATE of West Virginia, Plaintiff Below, Appellee**

**v.**

**Mara SPADE, Defendant Below, Appellant.**

**No. 35275.**

Supreme Court of Appeals of West Virginia.

Submitted April 14, 2010.

Decided June 4, 2010.

Paul G. Taylor, Esq., Martinsburg, WV, for Appellant.

Christopher C. Quasebarth, Esq., Deputy Prosecuting Attorney, Berkeley County Prosecuting Attorney's Office, Martinsburg, WV, for Appellee.

PER CURIAM:

This case is before the Court upon an appeal of the August 11, 2008, order of the Circuit Court of Berkeley County by the appellant, Mara Spade, through which the circuit court dismissed her appeal and affirmed her conviction in the magistrate court of one count of cruelty to animals. In this appeal, the appellant argues that she was denied due process when the circuit court dismissed her appeal from the magistrate court on the basis that it was prohibited under Rule 20.1(a) of the Rules of Criminal Procedure for the Magistrate Courts of West Virginia and when the magistrate court refused to conduct a restitution hearing. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court committed reversible error and accordingly, reverses the decision below and remands this case to the magistrate court to hold a restitution hearing.

## I.

### FACTS

In 1996, the appellant, Mara Spade, started Second Chance Rescue (hereinafter, "Second Chance"), a private, non-profit, no-kill dog rescue shelter in Berkeley County, West Virginia. According to the appellant, the shelter was dedicated to sheltering, caring for, and placing abandoned and homeless dogs that are often refused by other shelters. Many of the dogs arrived at the shelter with existing health problems and the appellant contends that she would attempt to nurse the animals back to health at her own expense.

Between April 2006 and July 2006, Berkeley County Animal Control officers, upon receiving complaints regarding the care of the dogs, investigated Second Chance and found numerous dogs that were hurt or sick, dead dogs, and dogs with other problems. For instance, on May 24, 2006, a search warrant was executed at Second Chance and a total of four dogs were seized and one dog was found dead. The animals were seized pursuant to the animal seizure statute W.Va.Code § 7–10–4 (2003).[1] On June 29, 2006, a second search warrant was executed at Second

Chance and animal control officers seized forty-two additional dogs that appeared to be neglected or in poor health. Another dog was found dead at that time. During that same visit to the property, a local veterinarian, Dr. Todd Sauble, accompanied the officers and observed too many dogs per pen, inadequate ventilation, horrible sanitation, inadequate food and water, multiple dogs with open wounds and lameness, puppies with "pot bellies" and diarrhea, inadequate fencing, and piles of rotten food. On July 6, 2006, a third search warrant was executed at Second Chance upon allegations of animal cruelty. At that time, another 103 dogs were seized, bringing the total number of dogs seized from Second Chance to 149 dogs.

On June 29, 2006, the appellant was charged with one count of animal cruelty in violation of W.Va.Code § 61–8–19 (2005).[2] On July 12, 2006, the magistrate court held a seizure hearing pursuant to W.Va.Code § 7–10–4, and concluded that the dogs were "neglected, deprived of necessary medical care or cruelly treated," and awarded temporary custody of the dogs to the Berkeley County Animal Control pending further disposition. Pursuant to W.Va.Code § 7–10–4(c),[3] the

1. West Virginia Code § 7–10–4, provides, in part:
 (a) Subject to the provisions of subsection (h) of this section, a humane officer shall take possession of any animal, including birds or wildlife in captivity, known or believed to be abandoned, neglected, deprived of necessary sustenance, shelter, medical care or reasonable protection from fatal freezing or heat exhaustion, or cruelly treated or used, as defined in sections nineteen and nineteen-a, article eight, chapter sixty-one of this code.
 West Virginia Code § 7–10–4 was amended in 2008 and 2009. The statute as provided herein does not reflect those amendments and is included as written at the time the animals were seized by the Animal Control officers.

2. W.Va.Code § 61–8–19, in part, provides:
 (a) If any person cruelly mistreats, abandons or withholds proper sustenance, including food, water, shelter or medical treatment, necessary to sustain normal health and fitness or to end suffering or abandons any animal to die, or intentionally, knowingly or recklessly leaves an animal unattended and confined in a motor vehicle when physical injury to or death of the animal is likely to result, or rides an animal when it is physically unfit, or baits or harasses any animal for the purpose of making it perform for a person's amusement, or cruelly chains any animal or uses, trains or possesses

any domesticated animal for the purpose of seizing, detaining or maltreating any other domesticated animal, he or she is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than three hundred nor more than two thousand dollars or confined in jail not more than six months, or both.
West Virginia Code § 61–8–19 was amended in 2008. The statute as provided herein does not reflect those amendments and is included as written at the time the appellant committed the underlying offense.

3. W.Va.Code § 7–10–4(c) provides:
 (1) Upon finding of probable cause, or if no hearing is requested and the magistrate finds probable cause based upon the affidavit of the humane officer, the magistrate shall enter an order awarding custody of the animal to any humane officer for further disposition in accordance with reasonable practices for the humane treatment of animals. The owner of the animal shall post a bond with the court in an amount sufficient to provide for the reasonable costs of care, medical treatment and provisions for the animal for at least thirty days. The bond shall be filed with the court within five days following the court's finding of probable cause. At the end of the time for which expenses are covered by the original bond if the

magistrate court ordered the appellant to post a $25,000.00 bond to cover the estimated costs of caring for the dogs for one month. On July 19, 2006, the appellant posted the $25,000.00 cash bond. Thereafter, upon being presented with an order detailing the actual costs incurred for the care, medical treatment, and provisions of the seized animals in the sum of $35,714.98, through August 8, 2006, the magistrate court ordered a draw-down of the entire $25,000.00 bond. On August 22, 2006, the appellant was ordered to post an additional $25,000.00 bond.

Following the magistrate court's oral July 12, 2006, ruling, which was memorialized by a July 19, 2006, written order, the appellant filed a petition for writ of prohibition with the circuit court seeking to bar the magistrate court from entering the order. The circuit court denied the petition on July 19, 2006. Thereafter, on August 4, 2006, the appellant filed a notice of removal to the circuit court, attempting to remove the entire proceeding from magistrate court to the circuit court. On that same date, the appellant also filed a petition for appeal in the circuit court. Next, on August 25, 2006, the appellant filed in the circuit court an additional petition for a writ of prohibition. These petitions sought to bar the magistrate court from ordering disbursement from the bond that was posted for "the actual reasonable costs incurred in providing care, medical treatment and provisions" to the animals seized. The appellant argued that the magistrate court no longer possessed jurisdiction over the case since the appellant had appealed it to the circuit court.

On August 29, 2006, the circuit court conducted a hearing to determine whether to issue a rule to show cause on the extraordinary writs, the appeal, and the motion for removal. The circuit court ruled that the magistrate court's July 19, 2006, order was

an unappealable interlocutory order since the seizures under W.Va.Code § 7–10–4 were intertwined with the criminal proceeding under W.Va.Code § 61–8–19. The appellant's appeal was, therefore, dismissed. The circuit court also ruled that since the appeal was improperly filed, the magistrate court maintained jurisdiction over the matter to entertain the bond issues. The circuit court further found that the magistrate court did not exceed its lawful authority under W.Va.Code § 7–10–4(c) in disbursing the initial $25,000.00 upon the finding that the expenses incurred at that time were $35,714.98, which exceeded the $25,000.00 bond sum. Accordingly, the appellant's petitions for writ of prohibition as well as her attempt to remove the case to the circuit court were also denied.

Following the circuit court's rulings, on August 30, 2006, the appellant posted with the circuit clerk the second required $25,000.00 bond. On October 10, 2006, the appellant filed a petition for a writ of prohibition and/or mandamus and/or in the alternative for appeal with this Court. The petition alleged that the circuit court and magistrate court erred in the underlying proceedings. This Court refused the petition. Subsequent to filing the October 10, 2006, petition with this Court, the appellant filed a motion in the circuit court for reconsideration of its October 3, 2006, order, which allowed the initial $25,000.00 bond disbursement. On November 2, 2006, the circuit court denied the appellant's motion for reconsideration. Throughout this time period, the Berkeley County Animal Control was still providing food, care, and shelter for the seized dogs, or contracting for the same, as they had for more than six months. Some of the 149 seized dogs were adopted, others died, and the remainder continued to receive treatment by a veterinarian.

animal remains in the care of the humane officer and the owner desires to prevent disposition of the animal by the humane officer, the owner shall post an additional bond with the court within five days of the expiration of the original bond. During this period the humane officer is authorized to place the animal in a safe private home or other safe private setting in lieu of retaining the animal in an animal shelter. The person whose animal is seized is

liable for all costs of the care of the seized animal.

(2) If a bond has been posted in accordance with subdivision (1) of this subsection, the custodial animal care agency may draw from the bond the actual reasonable costs incurred by the agency in providing care, medical treatment and provisions to the impounded animal from the date of the initial impoundment to the date of the final disposition of the animal.

On January 7, 2007, the State submitted a proposed order and supporting invoices for the magistrate court to authorize a second disbursement of the bond that was posted by the appellant in August 2006. On February 2, 2007, a hearing was held before the magistrate court on the request for disbursement and the requirement by the State that a new bond be posted. The State contends that it was then prepared to present its witnesses in support of the actual reasonable costs incurred to date (subtracting the initial $25,000.00 bond paid out) which totaled $139,883.77. However, according to the State, the appellant did not challenge those amounts, and the State did not call the witnesses.

On February 21, 2007, the magistrate court ordered disbursement of the second $25,000.00 bond and ordered the appellant to post a new bond in the amount of $139,883.77. The appellant was required to post the new bond by February 28, 2007, or she would relinquish her rights to the dogs to the Berkeley County Animal Control. The appellant did not post the new bond and the dogs were awarded to Animal Control. The dogs were adopted and no further expenses accrued after that time or were requested by the State beyond what was allowed in the February 21, 2007, order.

Thereafter, pursuant to a plea agreement, the appellant pled no contest in magistrate court to the sole misdemeanor count of animal cruelty. The December 3, 2007, plea agreement provided that the appellant would receive a "Restitution/Prob hearing ... in due course[,]" she would obtain a psychological evaluation, and the State would recommend probation. The February 4, 2008, sentencing order, styled "Probation Order," provided that the appellant shall not move out of state "until Restitution hearing is held" and that the appellant shall make restitution in an amount "to be determined." The magistrate court sentenced the appellant to ninety days in jail, but then suspended that sentence and imposed two years probation.

A restitution hearing was set for March 26, 2008. However, the State filed a motion on March 24, 2008, asking the magistrate court to rule that the amount of restitution had already been decided when the bonds were ordered disbursed, and thus the issue of restitution was *res judicata*. Thereafter, the magistrate court granted the State's motion denying the appellant a restitution hearing and ordering her to pay restitution in the amount of $114,883.77, the sum remaining after deducting the two previous $25,000.00 bond disbursements.

Subsequently, the appellant appealed the magistrate court's order to the circuit court asserting that she was denied the opportunity to challenge the amount of restitution. On August 11, 2008, the circuit court entered an order affirming the judgment of conviction entered against the appellant by the magistrate court and dismissing the appellant's petition for appeal. This appeal followed.

## II.

## STANDARD OF REVIEW

As noted above, the appellant assigns as error the magistrate court's dismissal of her appeal and its failure to hold a restitution hearing regarding the disbursement of the funds from the bonds posted without allowing her notice and opportunity to be heard on the issue. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, the parties' arguments will be considered.

## III.

## DISCUSSION

In this appeal, the appellant argues that she was denied due process when the circuit court dismissed her appeal from the magis-

trate court on the basis that it was prohibited under Rule 20.1(a) of the Rules of Criminal Procedure for the Magistrate Courts of West Virginia, which states:

> Except for persons represented by counsel at the time a guilty plea is entered, any person convicted of a misdemeanor in a magistrate court may appeal such conviction to the circuit court as a matter of right. . . .

The circuit court found that:

> Even though Rule 20.1 does not state that a no contest plea is included in the exception, the legislature likely intended for no contest pleas to be included in this language. Appeals of Magistrate Court jury trials and bench trials are anticipated in Rule 20.1(d). If the legislature intended for a separate appellate procedure for no contest pleas, then it would have provided language indicating this.

The appellant contends, however, that Rule 20.1(a) does not apply in this instance because she was not appealing her conviction. Rather, her appeal was based upon the fact that the magistrate court refused to hold a restitution hearing even though the terms of her plea agreement specifically required that such a hearing be held. She further points out that her sentencing order also provided that such a hearing was to be held soon thereafter.

In response, the State maintains that Rule 20.1(a) does apply and that the appellant simply has no right to appeal her conviction. In support of its argument, the State also relies upon W.Va.Code § 50–5–13(e) which provides:

> Notwithstanding any other provision of this code to the contrary, there shall be no appeal from a plea of guilty where the defendant was represented by counsel at the time the plea was entered: Provided, That the defendant shall have an appeal from a plea of guilty where an extraordinary remedy would lie or where the magistrate court lacked jurisdiction.

In sum, the State contends that the appellant's appeal is barred by Rule 20.1(a) and W.Va.Code § 50–5–13(e). This Court disagrees with the State's position.

 Based upon the specific facts of this case, Rule 20.1(a) and W.Va.Code § 50–5–13(e) did not exclude the appellant's appeal to the circuit court.[4] To the contrary, this Court agrees with the appellant's contention that she was not challenging her conviction, but only challenging the fact that she was not provided a restitution hearing to explore the actual reasonable expenses incurred by the county in maintaining 149 dogs for eight months. The appellant's appeal to the circuit court involved a collateral issue surrounding her underlying conviction. Her decision to or not to challenge her actual plea agreement or subsequent sentencing order was a decision entirely within her discretion. Likewise, her decision to challenge the collateral issues surrounding the magistrate court's final order, such as its failure to hold a restitution hearing, was an appropriate and timely appeal based upon how this Court has traditionally allowed appeals of collateral issues following a final order from a presiding court.

 Moreover, while neither rule of this Court nor statutory law directly address the issue of collateral appeals, our principles of due process necessarily allow for such an appeal as sought by the appellant in this case. As stated, the appellant entered a conditional plea to one count of animal cruelty wherein she specifically reserved the right to a restitution hearing that she has yet to receive. Further, this same restitution hearing was unconditionally provided for and included as a part of her sentencing order. This Court has explained that " [t]he due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard.' Syllabus Point 2, *Simpson v. Stanton,* 119 W.Va. 235, 193 S.E. 64 (1937)." Syllabus Point 2, *State ex rel. Bd. of Educ. of County of Putnam v. Beane,* 224 W.Va. 31, 680 S.E.2d 46

---

**4.** While this Court believes that the appeal should have been allowed by the circuit court, we note that the appellant could have filed a petition for a writ of mandamus to enforce the conditions of her plea agreement.

(2009). In Syllabus Point 2 of *State ex rel. Ellis v. Kelly,* 145 W.Va. 70, 112 S.E.2d 641 (1960), this Court held that: "Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments." Equally important is this Court's holding in Syllabus Point 2 of *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978), which provides that "[u]nder procedural due process concepts a hearing must be appropriate to the nature of the case and from this flows the principle that the State cannot preclude the right to litigate an issue central to a statutory violation or deprivation of a property interest." *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); W.Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.").

█ It is self-evident that " '[a]side from all else, due process means fundamental fairness.' " *Choma v. West Virginia Div. of Motor Vehicles,* 210 W.Va. 256, 260, 557 S.E.2d 310, 314 (2001) (*quoting Pinkerton v. Farr,* 159 W.Va. 223, 230, 220 S.E.2d 682, 687 (1975)). Here, in spite of the fact that she has not been provided a hearing to dispute the enormous amounts of alleged expenses incurred by county Animal Control officers, the appellant has already provided $50,000.00 in bonds that have been disbursed by the circuit court and has been ordered to pay another $114,883.77. In the context of the appellant's case, due process requires that she be able to contest the amount of restitution she is required to pay as contemplated by her plea agreement and as provided for by her sentencing order. Accordingly, the circuit court erred in dismissing the appellant's appeal based upon Rule 20.1(a) of the rules of Criminal Procedure for the Magistrate Courts of West Virginia.

█ Having determined that the circuit court should have allowed the appellant's appeal to proceed, this Court will now consider the appellant's argument that the magistrate court erred in refusing to provide her a restitution hearing. While the appellant pre-sented that issue below, the circuit court did not address it on the merits as it dismissed the appellant's appeal under Rule 20.1(a) of the Rules of Criminal Procedure for the Magistrate Courts of West Virginia. Generally, " '[t]his Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.' Syl. pt. 4, *Wheeling Downs Racing Association v. West Virginia Sportservice, Inc.,* 157 W.Va. 93, 199 S.E.2d 308 (1973)." Syllabus Point 3, *Dean v. Dept. of Motor Vehicles,* 195 W.Va. 70, 464 S.E.2d 589 (1995). However, on occasion, we have found it necessary to address issues not technically before us. In those instances, this Court has determined that sufficient collateral consequences will result from determination of the question presented so as to justify relief; that the issue is of such great public interest that it must be addressed to provide future guidance to the bar and the public; or that the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting and determinate nature. *See J.M. v. Webster County Bd. of Educ.,* 207 W.Va. 496, 534 S.E.2d 50 (2000); *McGraw v. Caperton,* 191 W.Va. 528, 446 S.E.2d 921 (1994); *Israel v. West Virginia Secondary Schools Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989). In this case, the issue presented is a question of law and can be decided based upon the record before us. Given this fact, we find that the interests of judicial economy and finality require us to render a decision on this issue instead of remanding the case to the circuit court and waiting for it to come before us on a second appeal.

█ In the case at hand, the appellant states that her plea was contingent upon the convening of such a hearing. The appellant then maintains that it is clearly indicated on the last page of the plea agreement and on both pages of the probation order that the parties and magistrate understood, agreed, and anticipated the convening of a hearing where restitution, including the necessity and reasonableness of the costs allegedly incurred by Animal Control, would be addressed. The appellant contends, however, that despite such an agreement, the State

then chose to breach that agreement at the last moment by arguing that the issue of restitution was *res judicata*. The appellant states that *res judicata* did not apply because a final hearing in the matter had not taken place and that there had never been an evidentiary hearing on the necessity and reasonableness of the alleged costs incurred. The appellant declares that the State's actions violate her right to fundamental fairness.

Conversely, the State maintains that the magistrate court did conduct a post-conviction restitution hearing. At that hearing, the State argues that the magistrate court determined that the matter of restitution had already been ruled upon in the animal seizure proceedings and was thus *res judicata*. According to the State, at the February 2, 2007, hearing, the State was prepared to present witnesses to support the actual, reasonable costs incurred to that date for caring for the dogs; however, the State declares that the appellant specifically declined to challenge those sums and no witnesses were called. The State further contended that it was at this hearing that the magistrate court made findings of actual reasonable costs when it ordered disbursement of the second $25,000.00 bond and ordered that a third bond in the sum of $139,883.77 be posted.

In consideration of all of the above, this Court does not find the State's argument compelling that the appellant declined to challenge the restitution order at the February 2, 2007, hearing. In fact, the record before this Court is void of any such transcription or recording of that hearing.[5] Accordingly, there is no evidence whatsoever to support the State's contention; instead, the

actual evidence before this Court leads to the opposite conclusion.

To that end, the record before this Court demonstrates that the appellant attempted on numerous occasions to challenge the amounts she was required by the magistrate court to post in separate bonds to cover the estimated costs of caring for the dogs. For instance, the appellant filed a petition for writ of prohibition with the circuit court seeking to bar the magistrate court from entering the initial order requiring her to post the $25,000.00 bond. Then, on August 25, 2006, the appellant filed an additional petition for a writ of prohibition in the circuit court seeking to bar the magistrate court from ordering disbursement from the bond that was posted for "the actual reasonable costs incurred in providing care, medical treatment and provisions" to the animals seized. The appellant argued that the magistrate no longer possessed jurisdiction over the case since the appellant had appealed it to the circuit court. By order entered August 31, 2006, the circuit court denied the appellant's petitions and held that:

> This Court concludes that the July 19, 2006, Order is not a final appealable order, but an intermediate issue in the criminal proceeding. A final order will come at the resolution of the criminal animal cruelty case. W.Va.Code § 7–10–4 must be read parallel to the criminal statute, W.Va.Code § 61–8–19. That the probable cause hearing of W.Va.Code § 7–10–4 is simply an interlocutory proceeding in the criminal case is apparent from the plain language of W.Va.Code § 7–10–4(d),[6] which reads in part (with emphasis added):

> > provide for the maintenance of the seized animal. *This expense, if any, becomes a lien on the animal and must be discharged before the animal is released to the owner following the acquittal of the owner or withdrawal of the complaint.* Upon acquittal, or withdrawal of the complaint, any unused portion of posted bonds shall be returned to the owner. Upon a criminal conviction, all interest in the impounded animal shall transfer to the humane officer for the further disposition in accordance with reasonable practices for the humane treatment of animals. Any additional expense above the value of the animal may be recovered by the humane officer or custodial agency.

---

**5.** In reviewing this case, the Clerk's Office of this Court contacted the magistrate court and was informed that no transcription or recording of the February 2, 2007, hearing exists.

**6.** W.Va.Code § 7–10–4(d) provides:

(d) Any person whose animal is seized and against whom a finding of probable cause is rendered pursuant to this section is liable during any period it remains in the possession of the humane officer for the reasonable costs of care, medical treatment and provisions for the animal not covered by the posting of the bond as provided in subdivision (1), subsection (c) of this section. The magistrate shall require the person liable for these costs to post bond to

*Upon acquittal*, or withdrawal of the complaint, any unused portion of the posted bonds shall be returned to the owner. *Upon a criminal conviction*, all interest in the impounded dogs shall transfer to the humane officer for the further disposition in accordance with reasonable practices for the humane treatment of animals.

The circuit court further held that the circuit court's July 19, 2006, denial of the appellant's petition for a writ of prohibition was simply a refusal to enter a show cause order and was not a ruling on any merits of the case. Thereafter, in a September 13, 2006, letter to the circuit court, the appellant's counsel wrote, in part:

Dear Judge Sanders:

I am in receipt of the proposed Order dated August 22, 2006 regarding the aforementioned matter. Please be advised that my client objects to the entry of this Order because we have not had an opportunity to explore the accuracy, appropriateness and reasonableness of the costs referenced in the proposed order.

Then, on October 10, 2006, the appellant filed a petition for a writ of prohibition and/or mandamus and/or in the alternative for appeal with this Court. On November 2, 2006, the appellant also filed a motion in the circuit court for reconsideration of its October 3, 2006, order, allowing the initial $25,000.00 bond disbursement.

Perhaps even more indicative of the appellant's constant quest for a restitution hearing was her December 3, 2007, entry of a plea to one count of animal cruelty. As explicitly provided by that plea agreement, the appellant would soon thereafter receive a "Restitution/Prob hearing ... in due course[.]" Likewise, on February 4, 2008, the sentencing order, styled "Probation Order," provided that the appellant shall not move out of state "until Restitution hearing is held" and that the appellant shall make restitution in an amount "to be determined." Then, despite the fact that a restitution hearing was set for March 26, 2008, the State filed a March 24, 2008, motion asking the magistrate to rule that the amount of restitution had already been decided when the bonds were ordered disbursed, thus arguing that the issue of restitution was *res judicata*. As previously discussed, this was followed by the circuit court's March 26, 2008, refusal to allow the appellant the opportunity to be heard on the issue of the reasonableness and necessity of the costs allegedly incurred by county Animal Control. Instead, the magistrate court simply ordered the appellant to pay restitution of the remaining $114,883.77; this was in addition to the two other bonds that she had already posted in the amounts of $25,000.00 each.

It is difficult to believe that the appellant would sign the plea agreement and sign the sentencing/probation order, both of which specifically and unequivocally reserved a restitution hearing, knowing that such a hearing would never occur. It is further difficult to comprehend why the State would stand idly by as a party to the proceeding and allow the plea agreement to be signed with an unambiguous reservation of a restitution hearing, and then contest the appellant's right to have that same hearing. Moreover, the State was clearly a party to the February 4, 2008, sentencing/probation order, which undisputedly contemplated and provided for a restitution hearing. That order was even signed by the assistant prosecuting attorney, despite the fact that the prosecuting attorney's office later challenged the right of the appellant to participate in such a hearing.

This Court has explained that a plea agreement is subject to the principles of contract law insofar as its application insures that a defendant receives that to which he or she is reasonably entitled. In *State ex rel. Gardner v. West Virginia Div. of Corrections*, 210 W.Va. 783, 786, 559 S.E.2d 929, 932 (2002), this Court explained:

We have recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 192, 465 S.E.2d 185, 192 (1995). Such agreements require "ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the

defendant's right to fundamental fairness[.]" *State v. Myers,* 204 W.Va. 449, 458, 513 S.E.2d 676, 685 (1998).

Likewise, "When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syllabus Point 4, *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998). *See State ex rel. Gray v. McClure,* 161 W.Va. 488, 492, 242 S.E.2d 704, 707 (1978) ("The rule we follow ... is that a prosecuting attorney ... is bound to the *terms of a plea agreement once the defendant enters a plea of guilty or* otherwise acts to his substantial *detriment in reliance thereon.*") (emphasis in original). This Court in *Gardner* further recognized that

> " '[d]ue process concerns arise in the process of enforcing a plea agreement.' " *Myers,* 204 W.Va. at 457, 513 S.E.2d at 684 (quoting *State v. Smith,* 207 Wis.2d 258, 558 N.W.2d 379, 385 (1997)). Furthermore, in *Gray* we noted that "[p]ermitting the prosecution to breach a plea bargaining agreement has been characterized as 'extremely detrimental to the administration of justice if it should be established.' " *Gray,* 161 W.Va. at 491, 242 S.E.2d at 706 (quoting *People v. Siciliano,* 185 Misc. 149, 152, 56 N.Y.S.2d 80, 82 (1945)). Thus, "when a plea rests in any significant degree on a promise or agreement ... so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

210 W.Va. at 786, 559 S.E.2d at 932.

It is clear to this Court that the appellant entered into a valid plea agreement that required a restitution hearing to be held soon thereafter and this was specifically agreed to by all parties. It is further clear that such a hearing did not occur. As such, the circuit court abused its discretion in affirming the magistrate court's order. Accordingly, this Court reverses the circuit court and remands the case to the magistrate court for a full and fair determination of the actual reasonable costs incurred in providing care, medical treatment and provisions to the animals seized.[7]

## IV.

### CONCLUSION

For the reasons stated above, the final order of the Circuit Court of Berkeley County entered on August 11, 2008, is reversed and this case is remanded to the Magistrate Court of Berkeley County to conduct a restitution hearing to determine the actual reasonable costs incurred in providing care, medical treatment and provisions to the animals seized as consistent with this opinion.

Reversed and remanded with directions.

---

7. The appellant also argued that the circuit court improperly allowed disbursement of the two separate $25,000.00 bonds she already posted. Since this Court is reversing the circuit court and remanding the case to the magistrate court for a full and fair hearing dealing specifically with the actual reasonable costs incurred in providing care, medical treatment and provisions to the animals seized, the appellant will have an opportunity to present such an argument during her restitution hearing before the magistrate court.