IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0602

_____

**FILED**
**October 28, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HOMER DYE,
Plaintiff Below, Petitioner

v.

COUNTY COMMISSION OF MARION COUNTY,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Case No. CC-24-2016-AA-3

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: September 28, 2021
Filed: October 28, 2021

Richard R. Marsh, Esq.                      Charles A. Shields, Esq.
Flaherty Sensabaugh Bonasso PLLC            Assistant Prosecutor
Clarksburg, West Virginia                   Marion County Prosecuting
Counsel for Petitioner                       Attorney's Office
                                            Fairmont, West Virginia
                                            Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 1, *State v. Spade*, 225 W. Va. 649, 695 S.E.2d 879 (2010).

2.      Neither the provisions establishing the ex parte will probate procedure, West Virginia Code §§ 41-5-10 to -11 (2019), nor the provisions creating the office of fiduciary supervisor, West Virginia Code §§ 44-3A-1 to -44 (2019 & Supp. 2021), provide statutory authority for a fiduciary supervisor to undertake an independent investigation into the validity of a will that has been admitted into probate.

3.      There is no mechanism contained in the ex parte probate procedure set forth in West Virginia Code § 41-5-10 (2019) and West Virginia Code § 41-5-11 (2019) that allows a county commission to rescind its prior order admitting a will to probate.

**WOOTON, Justice:**

The petitioner, Homer Dye, appeals the July 1, 2020, order entered by the Circuit Court of Marion County, West Virginia, denying his appeal from an order entered by the respondent Marion County Commission ("county commission"), declaring the holographic Will of Oras Dye ("the Will") to be void and rescinding the petitioner's appointment as Executor of the Estate of Oras Dye. On appeal, the petitioner raises a single assignment of error, which contains several issues.[1] We find it necessary to only address: 1) whether the fiduciary supervisor and the county commission lacked statutory authority to investigate the validity of a Will, and unilaterally declare it to be void, after said Will had been admitted to probate; and 2) whether the county commission failed to provide the petitioner with notice and an opportunity to be heard, before taking the action cited above in voiding the Will,[2] violated the petitioner's right to due process of law. After careful review of the briefs, the arguments of the parties, the appendix record, and the applicable legal authority, we find that the fiduciary supervisor lacked authority to investigate the validity of a Will already admitted to probate, and that the county commission lacked authority to revoke a Will's prior admission to probate. We therefore reverse the circuit court's order and remand the case for entry of an order declaring that the Will of Oras Dye

---

[1] Because the petitioner lumped several alleged errors into a single assigned error, we have rephrased the assigned error by breaking it down into separate issues for ease of discussion.

[2] In light of the Court's reversal based on the lack of the fiduciary supervisor's and the county commission's statutory authority, we find there is no need to address the petitioner's argument regarding the untimeliness of the county commission's actions.

1

was admitted to probate as a valid will on February 4, 2016, and reinstating the petitioner as the executor of the decedent's estate.

## I. Facts and Procedural Background

On December 15, 2013, a holographic Will was signed by Oras Dye, the petitioner's brother. A little over two years later, Oras died on December 25, 2015; on January 6, 2016, the petitioner took the Will to the Office of the Clerk of the County Commission of Marion County ("county clerk") to present it for probate. The county clerk did not accept the Will for probate at that time but allowed it to be lodged for review. On January 21, 2016, Cynthia A. Danley, Deputy Supervisor of the Office of the Fiduciary Supervisors, wrote to the petitioner, explaining that in the opinion of the Fiduciary Supervisor, David Glance ("the fiduciary supervisor"), the Will could not be proven because it was not signed by two disinterested witnesses.[3] Ms. Danley advised the petitioner that the decedent's children (also referred to as the "heirs at law") had "indicated that one of them wishes to be appointed as Administrator of the Estate." Ms. Danley gave the petitioner seven days to consult with an attorney, and advised that if she did not hear from him within that time frame, one of the heirs at law would be appointed as administrator of the estate.

---

[3] *See* W. Va. Code 41-2-1 (2019) (pertaining to competency of witnesses to a will who also are beneficiaries under the will).

On January 26, 2016, after receiving the letter, the petitioner went to the fiduciary supervisor's office.  While it is unclear from the appendix record whether the petitioner met with the fiduciary supervisor, the county clerk, or an employee in one of these offices, someone explained to him the requirements to probate the hand printed Will as a holographic Will under West Virginia law. [4]  He was provided with two standard form affidavits entitled "Proof of Holographic Will," for two witnesses to execute concerning the verification of the decedent's handwriting.[5]

---

[4] West Virginia Code § 41-1-3 (2019) provides:

> No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary.

Also, this Court held in syllabus point one of *In re Teubert's Estate*, 171 W. Va. 226, 298 S.E.2d 456 (1982), that "W. Va. Code, 41-1-3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent."

[5] The circuit court found that the affidavits were "the same Affidavits given to all persons tendering a holographic will for probate in Marion County, West Virginia, to provide the Marion County Clerk evidence authenticating the handwriting contained in a holographic will."

The petitioner had the two affidavits signed and notarized for attachment to the Will that was lodged in the county clerk's office. In the two affidavits, Alicia Healey and Yvonne Shaw, respectively, each swore that they knew the decedent and had seen him write frequently within the time period each affiant knew him and

> had been acquainted with his genuine proper handwriting for a number of years, and . . . [was] acquainted with and do know his handwriting and would and do know it when . . . [each affiant saw] it, and that the handwriting of said will of Oras D. Dye is the own genuine proper handwriting of said Oras D. Dye.

The petitioner then provided the completed affidavits to the county clerk. On February 4, 2016, the Will, with the accompanying affidavits, was admitted to probate and recorded by the county clerk's office, in vacation, as a holographic Will.

After admitting the Will to probate and recording it, the fiduciary supervisor, acting unilaterally and despite the lack of any objection having been lodged by anyone, decided to undertake his own investigation of the Will. By letter dated February 23, 2016, Ms. Danley informed the petitioner that "Mr. Glance, the Fiduciary Supervisor wishes to contact the witnesses who signed the Affidavits for Proving The Holographic Will." The petitioner was asked to provide the fiduciary supervisor with the addresses of the two affiants, Alicia Healey and Yvonne Shaw. The fiduciary supervisor, in turn, sent a letter, dated March 1, 2016, [6] to Ms. Healey and Ms. Shaw, respectively, stating:

---

[6] Interestingly, while the county commission's order voiding the Will provides that this letter was sent to the witnesses "[i]n response to the inquiries of the Fiduciary

4

> You have recently sworn, under oath, in Affidavits concerning the handwritten Will of Oras Dye.
>
> Before additional litigation takes place over this Will, I want to make sure of your position in this matter. The Will is printed and then signed by Oras Dye.
>
> Is it your sworn testimony that the printed Will was ALL done by Oras Dye? Or is it your sworn testimony that the signature on the Will is that of Oras Dye and you do not know who printed the Will. This is an important difference under West Virginia law, so I need you to sign the enclosed form and return it to our office.

Both witnesses responded to this inquiry by indicating that they only intended to verify the decedent's signature on the Will.

By letter dated April 18, 2016, the petitioner's counsel informed Ms. Danley of the petitioner's position that the validity of the Will had been resolved on February 4, 2016, when the Will had been admitted to probate and the petitioner had been duly appointed as executor. Counsel further advised Ms. Danley that "it is our opinion that Oras Delmus Dye's last will and testament is entirely valid" and that the Will comported with the requirements of West Virginia Code § 41-1-3.[7]

---

Supervisor[,]" the circuit court found in its order that "[i]n response to inquiries in the pending Estate of Oras Delmus Dye, the handprinted will and affidavits were reviewed by the Fiduciary Supervisor on March 1, 2016." There is no evidence of any "inquiries" into the Will in the appendix record.

[7] *See supra* note 4.

By letter dated April 25, 2016, the fiduciary supervisor responded to the petitioner's counsel, stating that he did not believe the Will was valid. Specifically, the fiduciary supervisor stated that he had followed up with the two affiants and "their responses did not affirm their Affidavits. They can only say that the signature on the Holographic Will is that of Oras Dye, but will not confirm that the Will is 'wholly in the handwriting of Oras Dye.'" He further stated that he

> was in the process of meeting with the Prosecutor's office to have an Order prepared for the County Commission, voiding the Will of record.

> Since your client has the burden of proving the Will of record "was wholly in the handwriting of Oras Dye," I will wait twenty (20) days before taking any action.

Finally, the fiduciary supervisor stated that he was also sending a copy of everything "to the Heirs at Law of Oras Dye, and by a copy of this letter, asking them to file their written position on the Holographic Will within the next twenty (20) days." Neither the petitioner, nor any of the heirs at law responded to the fiduciary supervisor's letter.[8]

---

[8] The petitioner's lack of response was due to his position that he had already proven the Will as evidenced by its recording and his appointment as executor. While there is a factual finding in the county commission's "Order Voiding Will of Record," and a similar finding in the circuit court's "Final Order Denying Appeal from County Commission," that "the children of Oras Dye met with the Fiduciary Supervisor the week of September 20, 2016, and expressed their concern that Homer Dye [the petitioner] was trying [to] sell the real estate of their father, Oras Dye, based upon the hand printed Will that is of record in the office of the Marion County Clerk[,]" there is no evidence in the appendix record to support this finding.

By letter dated October 5, 2016, the fiduciary supervisor provided the petitioner and the heirs at law a copy of an order entered by the county commission that same date, voiding the Will and rescinding the petitioner's appointment as Executor of the Estate of Oras Dye. This order had been entered by the county commission ex parte and without any notice to the petitioner, and the county commission's action was based solely upon the investigation conducted by the fiduciary supervisor, as there had never been any objection lodged by the "heirs at law" – or anyone else – to the Will. In its order, the county commission directed the petitioner to provide the fiduciary supervisor with a "Long Form Settlement detailing all actions taken as Executor from the date of his appointment to the date of settlement" within thirty days.

The petitioner appealed the county commission's order to the circuit court on November 2, 2016.[9] By order entered July 1, 2020, the circuit court denied the appeal, finding that the fiduciary supervisor's actions were "open and transparent" and were "reasonable and proper under the circumstances." Further, the court found that despite notifications from the fiduciary supervisor, the petitioner failed to respond in a timely manner "for more than five (5) months" after the fiduciary supervisor's April 25, 2016, letter. The circuit court then found that "[h]owever, from April 25, 2016, to October 5, 2016, the Petitioner, Homer Dye, took action to attempt to sell the real estate of his brother

---

[9] The docket sheet and the order indicate that a hearing on the petitioner's appeal was held on February 11, 2020; however, there is no transcript of this hearing included in the appendix record.

Oras D. Dye, under the void will, all to the prejudice of the children of Oras D. Dye, the statutory heirs of Oras D. Dye."[10] The circuit court determined that the petitioner had been given "reasonable opportunities to respond to the legal issues concerning" probate of the Will but had failed to take any action. The circuit court concluded:

> Petitioner and his Counsel had timely and reasonable opportunities to avail themselves of remedies before the Fiduciary Supervisor and the Marion County Commission, which satisfies all procedural due process concerns in this particular case. Since the Petitioner and his Counsel declined to avail themselves of the legal remedies by their own conduct, this Court readily concludes Petitioner has not been deprived of Due Process of Law.

The circuit court further determined that "from a thorough review of this matter, the actions of the Fiduciary Supervisor and the Marion County Commission were in accordance with all appropriate statutes and standards and were not otherwise arbitrary nor did they constitute an abuse of discretion." It is from this order that the petitioner appeals.

## II. Standard of Review

"'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 1, *State v. Spade*, 225 W. Va. 649, 695 S.E.2d 879 (2010); *see* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194

---

[10] Again, there is no evidence in the appendix record to support this finding.

8

W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With this standard in mind, we consider the parties' arguments.

## III. Discussion

### A. Lack of Statutory Authority to Act

### 1. Fiduciary Supervisor

The petitioner contends that the fiduciary supervisor did not have the authority to independently investigate the validity of a Will that had been accepted into probate and recorded. The petitioner asserts that a fiduciary supervisor's duties are set forth in statute and primarily involve oversight of fiduciaries and the administration of estates, not probate of wills. Further, the petitioner argues that the fiduciary supervisor, who is an agent of the county commission, should be neutral, not acting on behalf of either party to a disputed will. Conversely, the county commission contends that it has "exclusive jurisdiction of 'all matters' probate."[11] It also argues, albeit without citation of any legal authority, that "[t]he Fiduciary had not only the right, but also the statutory duty and obligation to determine the validity of the Will."

---

[11] *See* W. Va. Code § 7-1-3 (2019) (providing that county commissions "shall have jurisdiction in all matters probate . . . .").

9

It is undisputed that county commissions have subject-matter jurisdiction to hear probate matters. *See* W. Va. Code 7-1-3. However, subject matter jurisdiction to hear a case simply does not confer upon either the county commission or its agent the legal right to act outside the scope of statutory law enacted by the Legislature governing probate and administration of estates and trusts. In this regard, the office of fiduciary supervisor was statutorily created as an "optional procedure for proof and allowance of claims against estates of decedents." *See* W. Va. Code § 44-3A-1 to -44 (2019 & Supp. 2021) (creating counties with optional procedure for handling proof of claims made against estates). Specifically, West Virginia Code § 44-3A-2 provides that

> *the office of fiduciary supervisor . . . shall not be construed to vest judicial power in the holder . . . thereof. Such office[] [is] created to aid and assist the county commission in the proper and expeditious performance of the duties of such commissions with respect to the administration of estates and trusts* and every order of finding of any fiduciary supervisor . . . shall be subject to confirmation and approval of the county commission. . . . Every fiduciary supervisor . . . shall have the power to sign and issue process directed to the various parties in any proceeding before them and may summon witnesses, administer oaths and take testimony with respect thereto as may be required to carry out the purposes of this chapter, but they shall apply to the county commission or to the circuit court, as may be appropriate and lawful for any order to compel obedience to any such process or order issued by any such fiduciary supervisor . . . or to compel the obedience with any of the provisions of this chapter.

*Id*. (emphasis added). Further, West Virginia Code § 44-3A-44(a) provides that

10

(a) Subject to the provisions of subsection (c) of this section and to the provisions of article thirteen [§§ 44-13-1 et seq.][12] of this chapter, any power, authority or duty conferred upon the clerk of the county commission *with respect to the settlement, regulation and supervision of estates in any provision of this article or in any provision of this Code* is hereby transferred to the fiduciary supervisor created under the provisions of section three, article three-A of this chapter.

(Footnote and emphasis added).

In accordance with this statutory scheme, a fiduciary supervisor is an agent of the county commission. *Id*. § 44-3A-2. West Virginia Code § 44-3A-3(a) provides for the creation of the office of fiduciary supervisor within the county commission and directs that the fiduciary supervisor is to be "appointed by order of the commission and whose office, with the consent of the clerk of the county commission, shall be housed within the office of such clerk or shall be housed in such other office as the commission may designate." *Id.* The Legislature also provided that

[t]he fiduciary supervisor shall have general supervision of all fiduciary matters and of the fiduciaries or personal representatives thereof and of all fiduciary commissioners and of all matters referred to such commissioners and shall make all ex parte settlements of the accounts of such fiduciaries except as to those matters referred to fiduciary commissioners for settlement.

*Id*. § 44-3A-3(b).

---

[12] *See* W. Va. Code § 44-13-1 to -6 (2019) (pertaining to powers of the county court clerk where separate tribunal for police and fiscal purposes).

Throughout chapter 44 of the West Virginia Code pertaining to the "Administration of Estates and Trusts," the Legislature has identified certain express duties to be performed by a fiduciary supervisor.[13] Taken together, those statutes establish that a fiduciary supervisor's responsibilities concern only the "settlement, regulation and supervision of estates[.]" *See id*. § 44-3A-44(a). None of the statutory provisions give the fiduciary supervisor a role with regard to the probate of wills. *See generally* W. Va. Code

---

[13] While not intended to be an exhaustive discussion of all the statutorily delineated duties of fiduciary supervisors, the type of duties and responsibilities the Legislature intended for fiduciary supervisors to perform include "caus[ing] to be published" at least once a month in a newspaper of general circulation within the county wherein "letters of administration" have been granted, to provide notice to creditor and beneficiaries of named deceased persons to exhibit claims they may have against the estate or to protect their respective interests in the estate. W. Va. Code § 44-3A-4. As this statute provides, in the notice, beneficiaries are to file any claim with the fiduciary at the address provided within sixty days of the date of first publication of notice, or to exhibit any claim at the office of the fiduciary supervisor within the same time frame. *Id*. The fiduciary supervisor may also accept a "short form settlement" of an estate "where more than sixty days has elapsed since the filing of any notice required by section four . . . ." and the statutory requirements are met, "the fiduciary supervisor may proceed as in the case of any other settlement" *Id*. § 44-3A-4a. Further, West Virginia Code § 44-3A-8 provides for the fiduciary supervisor to accept claims against a decedent's estate before publication of notice. *See id*. § 44-3A-9 (providing for the fiduciary supervisor to accept proof of contingent or unliquidated claims against a decedent's estate). The fiduciary supervisor also may grant continuances until all claims against an estate and objections to any claims have been heard and "passed on." *Id*. § 44-3A-10. The fiduciary supervisor is also given the statutory authority to proceed with the summary settlement procedure, *see* West Virginia Code § 44-3A-19, and is charged with preparing a report on claims, which report may include direction to a personal representative to withhold from distribution to beneficiaries sufficient assets to take care of contingent and unliquidated claims or claims not matured. *Id*. § 44-3A-20. Further, twice a year, the fiduciary supervisor has a statutory duty to report to the county commission on delinquent filings. *Id*. § 44-3A-24. Finally, West Virginia Code § 44-3A-44(a), provides that "[*w*]*henever by any provision of this article any paper, document or record is required or permitted to be recorded, the fiduciary supervisor shall tender the same to the clerk of the county commission and such clerk of the county commission shall admit the same to record . . . .*" (Emphasis added).

12

§§ 44-3a-1 to -44. Further, and critical to our decision herein, the statutory scheme establishing the office of fiduciary supervisor is devoid of any language authorizing a fiduciary supervisor to sua sponte undertake an independent investigation into the validity of a will that has been previously admitted to probate.

As this Court has long held, "[i]t is fundamental that execution and probate of wills are governed by statutory law." *In re Winzenrith's Will*, 133 W. Va. 267, 275, 55 S.E.2d 897, 902 (1949). In this regard, West Virginia Code § 41-5-1 (2019) provides that

> [a] person having custody of a will shall, within thirty days after the death of the testator is known to him, *deliver such will to the clerk of the county court [now county commission] having jurisdiction of the probate thereof*, or to the executor named in the will, who shall offer it for probate, or deliver it to the clerk, within a reasonable time. Any person who shall, without reasonable cause, neglect so to deliver a will shall be guilty of a misdemeanor, and, on conviction, be punished by a fine not exceeding two hundred dollars; and shall in addition be liable to any person interested in such will for all damages caused by such neglect.

(Emphasis added). Once a will is delivered to the clerk of the county commission, it is incumbent upon the clerk to "notify by mail or otherwise the executor and the beneficiaries named in the will, of such delivery, and . . . [to] keep the same safe in his office until proceedings may be had for the probate thereof. . . ." *Id*. § 41-5-2 (2019). According to West Virginia Code § 41-5-3 (2019), *"[i]f any party desires to contest such will* he may by application to the court or the clerk thereof in vacation have a rule against the executors and all the beneficiaries named in the will, returnable to the court . . . ." (Emphasis added).

13

After a will has been delivered to the clerk of the county commission, there are two different statutory procedures for probate: probate in solemn form[14] and ex parte probate. In this case, the ex parte probate procedure was used as set forth in West Virginia Code § 41-5-10 (2019), which is the "usual method followed in this State." *Winzenrith's Will*, 133 W. Va. at 276, 55 S.E.2d at 902. Specifically, West Virginia Code § 41-5-10 provides:

> At, or at any time after, the production of a will, any person may move the county court [now county commission] having jurisdiction, or the clerk thereof in the vacation of the court, for the probate of such will, and the court or the clerk thereof, as the case may be, may, without notice to any party, proceed to hear and determine the motion and admit the will to probate, or reject the same. *The probate of, or refusal to probate, any will, so made by the clerk, shall be reported by him to the court at its next regular session, and, if no objection be made thereto, and none appear to the court, the court shall confirm the same. If any person entitled to contest the probate of a will shall appear before the clerk of the court before a decision is made by him admitting or refusing to admit the will to probate, or before the county court [now county commission] at any time before it has made an order confirming the action of the clerk in admitting or refusing to admit such will to probate, or before such court in any ex parte proceeding to probate a will made in the court in the first instance before it has made an order admitting or refusing to admit the will to probate, and file a notice of contest of the probate of the will, stating distinctly the several grounds of objection*, process on such notice shall be issued and the

---

[14] *See* W. Va. Code § 41-5-5 (2019) (providing procedure for probate in solemn form which requires the filing of "a petition duly verified by affidavit, stating when and where the testator died, his last place of residence, the nature of his estate, the relationship to decedent and place of residence of each of his heirs at law and distributees, surviving wife or husband, and each of the beneficiaries of the will."); *see also* W. Va. Code §§ 41-5-6 to -9 (2019) (concerning hearing, decision and appeal of probate order for probate in solemn form).

14

proceeding thereafter shall be heard before the county court [now county commission] only, and in all respects in the same manner as if the will had been offered for probate in solemn form; and any judgment entered by the county court [now county commission] on such proceeding shall have the same effect, and an appeal shall lie therefrom, as if the original proceeding to probate the will had been made in solemn form: Provided, that the only notice to the parties interested or process against them required in such case shall be upon the notice of contest. *In all ex parte proceedings in which there is no contest, the action of the clerk in admitting the will to probate, when confirmed by the court, shall have the same effect in all respects as if the will had been admitted to probate and record by the county court [now county commission]in the first instance.*

(Emphasis added).[15]

The Legislature has established a specific statutory process for individuals, such as the heirs at law in the instant case, to challenge a will before the county clerk and the county commission admit said will to probate, by filing "a notice of contest of the probate of the will, stating distinctly the several grounds of objection[.] . . ." *Id.* The filing of this notice triggers the issuance of "process on such notice" and "the proceeding thereafter shall be heard before the . . . [county commission] only, and in all respects in the same manner as if the will had been offered for probate in solemn form[.]" *Id.* This statute

---

[15] *See* W. Va. Code 41-5-17 (2019)("Every will or authenticated copy of a will, when admitted to probate under the provisions of this article, shall be recorded by the clerk of the county court [now county commission], and indexed by him in a general index of wills, and every such will or copy when recorded shall remain in his office except when removed therefrom by the order of a court, or under a subpoena duces tecum, or otherwise as provided by law.").

does not contain any language authorizing a fiduciary supervisor to challenge the validity of a will after it has been admitted to probate.

A person who was not a party to the ex parte proceeding set forth in West Virginia Code § 41-5-10 may challenge a will by following the procedure set forth in West Virginia Code § 41-5-11 (2019). This statute provides:

> After a judgment or order entered as aforesaid in a proceeding for probate ex parte, any person interested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by complaint to impeach or establish the will, on which complaint, if required by any party, a trial by jury shall be ordered, to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent. The court may require all other testamentary papers of the decedent to be produced, and the inquiry shall then be which one of all, or how much of any, of the testamentary papers is the will of the decedent. If the judgment or order was entered by the circuit court on appeal from the county commission, such complaint shall be filed within six months from the date thereof, and if the judgment or order was entered by the county commission and there was no appeal therefrom, such complaint shall be filed within six months from the date of such order of the county commission. If no such complaint be filed within the time prescribed, the judgment or order shall be forever binding. Any complaint filed under this section shall be in the circuit court of the county wherein probate of the will was allowed or denied.

*Id*.

As was the case with the statutes examined *supra*, the statutory language establishing the ex parte will probate procedure is devoid of any authorization for a fiduciary supervisor to undertake a unilateral, independent investigation into the validity

16

of a will already admitted to probate. *See Hose v. Estate of Hose*, 230 W. Va. 61, 66-67, 736 S.E.2d 61, 66-67 (2012) (determining that statute did not give fiduciary supervisor the authority to reject a claim against an estate, but the statute required a claim be objected to by specific persons, which did not include the fiduciary supervisor, and that once a proper objection was made, the claimant had to be given an opportunity to provide additional information to prove a claim at a hearing). Therefore, we now hold that neither the provisions establishing the ex parte will probate procedure, West Virginia Code §§ 41-5-10 to -11 (2019), nor the provisions creating the office of fiduciary supervisor, West Virginia Code §§ 44-3A-1 to -44 (2019 & Supp. 2021), provide statutory authority for a fiduciary supervisor to undertake an independent investigation into the validity of a will that has been admitted into probate.

In this case no one – neither the heirs at law nor any other person – filed any objection or challenge to the Will, either before it was accepted into probate and confirmed by the county commission or afterward under the ex parte will probate procedures. *See id*. As set forth *supra*, after the Will was admitted to probate and duly recorded, the fiduciary supervisor had no legal authority to begin his own independent investigation into the validity of the Will. More specifically, in the absence of a proper challenge, and where the Will had already been entered to probate and duly recorded, he had no legal authority to contact the witnesses in order to have them explain or clarify the substance of their respective affidavits; no legal authority to instruct the petitioner that he had the burden of proving that the Will was wholly in the decedent's handwriting; no legal authority to direct

17

that the petitioner respond to him within twenty days; and no legal authority to draft an order declaring the Will void and submit said order for entry by the county commission. In each of these actions the fiduciary supervisor was acting wholly outside the scope of his statutory authority.

## 2. County Commission

The petitioner also argues that the circuit court erred in failing to reverse the county commission's decision declaring the Will to be void. The petitioner contends that the Legislature has not provided a mechanism for a county commission to void a will unilaterally and without a challenge by the decedent's children or heirs-at-law. We agree and easily resolve this issue.

As previously discussed *supra*, West Virginia Code § 41-5-10 provides for a county commission to confirm the probate of a will accepted by the clerk unless an objection is made or an objection "appears to the county commission." *Id*. In this case, because there was no objection made, and none appeared to the county commission, it confirmed the county clerk's decision to admit the Will to probate as follows: "on February 4, 2016, the Marion County Commission admitted a Holographic Will of Oras D. Dye to probate, based upon the affidavits of Yvonne Shaw and Alicia Healey. The Will was recorded in Will Book No. 147, at page 228." Once the county commission admitted the Will to probate, its work was complete. Thereafter, although a complaint could have been filed pursuant to West Virginia Code § 41-5-11 to "impeach or establish the will," the

18

action lies in circuit court, not with the county commission. *Id.* Accordingly, we now hold that there is no mechanism contained in the ex parte probate procedure set forth in West Virginia Code § 41-5-10 (2019) and West Virginia Code § 41-5-11 (2019) that allows a county commission to rescind its prior order admitting a will to probate.

Simply stated, in the instant case, the county commission lacked the legal authority to void the Will – a lack of legal authority which was also fatal to its recission of the petitioner's appointment as the executor of the Estate of Oras D. Dye. The county commission's order invalidating the Will was void and unenforceable in its entirety, and therefore the circuit court committed reversible error, as a matter of law, in denying the petitioner's appeal.

## B. Lack of Due Process

The petitioner argues that he did not receive due process in the procedures utilized by both the fiduciary supervisor and the county commission. Specifically, he asserts that the fiduciary supervisor submitted the proposed order voiding the Will to the county commission ex parte, affording him no notice of its submission and no opportunity to be heard. Further, he argues that both the fiduciary supervisory and the county commission lacked the authority to invalidate the Will. Conversely, the county commission argues that the circuit court correctly found that the April 25, 2016, letter from the fiduciary supervisor to the petitioner was adequate notice and the petitioner simply failed to respond.

19

The unilateral, independent, and wholly unauthorized investigation undertaken by the fiduciary supervisor in this case not only trampled the due process rights that would have been afforded the petitioner in a valid challenge by any interested party to the Will, but also destroyed any semblance of the neutrality required by a fiduciary supervisor, who is an agent of the county commission, not of any interested parties to the Will. First, it is undisputed that petitioner did not receive notice from either the fiduciary supervisor or the county commission that a proposed order invalidating the Will had been prepared by the former and submitted for entry by the latter. In this regard, we are unpersuaded that the April 25, 2016, letter from the fiduciary supervisor constituted notice, as it failed to provide a specific date for a hearing in which the petitioner would be given an opportunity to be heard prior to a decision being made on the validity of the Will. *See* W. Va. Code § 41-5-10. Indeed, despite the fiduciary supervisor giving the petitioner twenty days in which to respond to the letter, there was no action taken in regard to the Will for over five months – and that action was taken in the absence of any challenge to the Will ever having been filed. Succinctly stated, the April 25, 2016, letter, which clearly was sent to the petitioner as part of the fiduciary supervisor's independent investigation, was not proper notice, did not provide an appropriate opportunity to be heard, and therefore failed to afford the petitioner due process. *See generally Estate of Hose*, 230 W. Va. 61 at 67, 736 S.E.2d at 67 ("The general scheme of the probate statutes reflect[s] a legislative intent that a claimant be given notice and an opportunity to be heard before a claim is rejected on its merits."); *see also* W. Va. Code § 41-5-11 (providing for a trial by jury).

20

Second, the April 25, 2016, letter is indicative of a much larger problem in this case: by ignoring the statutory ex parte will probate procedures, the fiduciary supervisor took on the role of advocate for the heirs at law and abandoned the neutrality and fairness intended by the Legislature in the administration of probate matters. This affected the entire probate process in this case. By becoming an independent investigator and advocate for the decedent's children, the fiduciary supervisor denied the petitioner notice and an opportunity to be heard, which are his statutory and constitutional rights. Further, the fiduciary supervisor devised, pursued, and ultimately resolved a nonexistent will contest, submitting an order to the county commission that handed the heirs at law a victory in a challenge they never brought. Moreover, the county commission also denied the petitioner his right to due process when it entered an ex parte order prepared and submitted by its agent, the fiduciary supervisor, without affording the petitioner notice and an opportunity to be heard.

Both the fiduciary supervisor and the county commission's actions were wholly unauthorized by statute and done in a manner that deprived the petitioner due process of law. Accordingly, the circuit court erred in upholding the county commission's order in this regard.

## IV. Conclusion

For the foregoing reasons, we reverse the circuit court's July 1, 2020, order denying the petitioner's appeal from the order entered October 5, 2016, by the respondent

21

Marion County Commission, declaring the Will of Oras Dye, the decedent herein, to be void and rescinding the petitioner's appointment as Executor of the Estate of Oras Dye. The case is remanded to the circuit court for entry of an order declaring that the Will of Oras Dye was admitted to probate as a valid will on February 4, 2016, reinstating the petitioner as the Executor of the Estate of Oras D. Dye, and for any additional proceedings consistent with this opinion.

Reversed and remanded with directions.